380 So.2d 804 (1980)
Godfrey STROZIER
v.
Michael M. MARCHICH, Charles Harkins, J. C. Cooley, Roy Wingo, Guy Crump.
78-756.
Supreme Court of Alabama.
February 22, 1980.
Robert B. Roden of Jones, Arnold & Roden, Birmingham, for appellant.
John H. Morrow and Braxton Schell, Jr. of Bradley, Arant, Rose & White, Birmingham, for appellees.
PER CURIAM.
Affirmed on the authority of Sasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973).
AFFIRMED.
All the Justices concur, except JONES, J., who dissents.
JONES, Justice (dissenting):
I respectfully dissent.
Plaintiff, alleging wanton injury, brought suit in 1978 against several of his co-employees arising out of a mining accident that occurred in 1975. Plaintiff alleges that his injury was proximately caused by Defendants' wanton supervision of his work and wanton inspection of the mine. The trial Court dismissed the complaint, holding the action is barred by the one-year statute of limitations (§ 6-2-39(a)(5), Ala.Code 1975).
Plaintiff appeals, contending that the allegations of wanton conduct are sufficient to state a cause of action in trespass subject to the six-year limitation (§ 6-2-34(2), Ala. Code 1975). Defendants' Appellees' position is that the complaint, alleging wanton supervision and inspection, merely alleges a *805 failure to act, or an omission of a duty, and states a cause of action for trespass on the casesubject to the one-year limitation rather than one for trespasssubject to the six-year limitation.
I believe the trial Court erred in applying the one-year, rather than the six-year, statute of limitations. Therefore, I would reverse and remand.
In the early English law, remedies for wrongs were dependent upon the issuance of writs to bring the defendant into court. Two writs were available for remedies purely tortious in character: One, for the action of trespass; and the other, for the action of trespass on the case. The action of trespass was directed at serious and forcible breaches of the King's peace; and it was only in connection with criminal proceedings that damages were assessed incidentally in favor of the injured plaintiff. Prosser, Handbook on the Law of Torts (4th ed. 1971), § 7 at 28.
Thus, trespass was the remedy for all forcible, direct injuries, whether to person or to property. Trespass on the case developed later as a supplement to the parent action of trespass, designed to afford a remedy for obviously wrongful conduct resulting in injuries which were not forcible or not direct. The distinction between the two lay in the immediate application of force to the person or property of the plaintiff, as distinguished from injury through some obvious and secondary cause. Id., at 28-29. The distinction was not one between intentional and negligent conduct. The emphasis was upon the causal sequence rather than upon the character of defendant's wrong. Trespass would lie for all direct injuries even though they were not intended; and the action of the case might be maintained for those which were intended but indirect. Id., at 29.
The procedural distinction between trespass and case has long been antiquated. Modern law has almost completely abandoned the artificial classification of injuries as direct and indirect (as distinguished from remote), and looks instead to the intent of the wrongdoer, or to his negligence. Id., at 29. According to Prosser, the first step toward the modern concept of torts was taken when the action on the case was extended to include injuries which were not intended but were merely negligently inflicted, and were inflicted indirectly.[1] Id., at 29.
The transition from the old English common law concept of torts (distinguishing between injury resulting from direct and indirect force) to the modern concept (distinguishing between injury resulting from intentional or wanton and negligent conduct) can be seen in the development of Alabama law from the early 19th century to modern times. In what, perhaps, is the earliest Alabama case treating the distinction between trespass and trespass on the case (Rhodes v. Roberts, 1 Stew. 145 (1827)), the original emphasis on causality, as opposed to intent, remained intact. In that case, the Court held that the master of a steamboat, from which a gun had been discharged injuring the plaintiff, was liable in trespass for punitive damages although the injury proceeded from want of due care merely. The Court stated the law as follows:
"As to the form of action for the injury charged, whenever the injury is direct and immediate, whether it proceed from design or negligence, trespass will lie. But where the injury is merely consequential, the remedy must be an action on the case." 1 Stew., at 146.
Nevertheless, a shift to an emphasis upon the culpability of the actor's conduct, as opposed to the causal relation of the conduct to the injury, can be seen as early as Bell's Adm'r v. Troy, 35 Ala. 184 (1859):
"It results from these plain principles, that a count which charges that Pleas willfully burned the dwelling-house of plaintiff, and that said slave was instigated and persuaded thereto by the defendant, is, in form, a count in trespass, and *806 charges the defendant with the commission of a felony.
"On the other hand, some of the counts, in both the original and amended complaints, charge on the defendant's intestate no actual or intentional procuration of the arson, but seek to base his liability on his negligently permitting Pleas, his slave, and of known bad character, to run at large, contrary to law. These counts, if they have any legal validity, are in case, and should not have been joined with a count in trespass." 35 Ala. at 202.
It is interesting to note, further, that the above case was decided only a few years after the first legislative enactment of the six-year statute of limitations for actions in trespass in Code 1852, § 2477. I find no legislative history to aid an inquiry whether the legislature, then or in subsequent enactments of the Statute, intended the original early English common law distinctions to apply to trespass and to trespass on the case. In any event, Alabama case law, while retaining the causal terminology of the English common law, continued to distinguish between the two primarily on the basis of whether the injury-producing conduct was intentional or merely negligent, as is demonstrated by the following cases spanning the period 1877 through 1921:
"For a tort committed with force and intentionally, the immediate consequence of which is injury, trespass is the appropriate remedy. If the injury proceeds from mere negligence, or is not the immediate consequence of the tort, case is the appropriate remedy." Pruitt v. Ellington, 59 Ala. 454, 457 (1877).
"It is the general rule, well settled by the decisions of this court, that if a tort be intentionally committed with force, the immediate consequence of which is injury, trespass is the appropriate remedy; that trespass lies to recover damages for an injury which is the direct and primary and inevitable result of gross or reckless carelessness; but, if the injury proceeds from mere negligence, and is not the immediate consequence of the tort, and though proximate is secondary and consequential, and is not the necessary result of the negligence, an action on the case, and not trespass is the proper remedy. [Citations omitted.]" Alabama Midland Railway Co. v. Martin & Bro., 100 Ala. 511, 513, 14 So. 401, 402 (1893).
"To commit a trespass, warranting an action for that cause as distinguished from the distinctive action of trespass on the case, the damnifying tort must have been `intentionally committed with force, the immediate consequence of which is injury,' or the injury must have been the direct, primary, inevitable result of `gross or reckless carelessness.' [Citations omitted.] Shook's act in the premises, as described in the count, does not imply or import an intention to injure plaintiff's intestate. It is not averred to have been characterized by any degree of wantonness, or even recklessness.... By the introduction of the term `negligently' in the phrase last quoted from the count, the pleader excluded intention and wanton or reckless disregard of consequences, in running the automobile upon or against intestate, as factors characterizing the tortious acta measure of exclusion that operated to deprive the court (so far as the defendant Shook was concerned) of an effect to implead Shook in trespass as distinguished from case." Aldrich v. Tyler Grocery Co., 206 Ala. 138, 139-40, 89 So. 289, 289-90 (1921).
Although, by this time, it was firmly established that injury arising from negligence may or may not be the result of direct force, these early cases appear to assume that the direct application of force always accompanies every intentional tort. It was not until Engle v. Simmons, 148 Ala. 92, 41 So. 1023 (1906), and Disheroon v. Brock, 213 Ala. 637, 105 So. 899 (1925), that the Supreme Court confronted this issue and expressly rejected the notion that the direct application of physical force was a necessary element of trespass when the injury sued upon was in fact the result of intentional tortious conduct. In Engle v. Simmons, a woman, who miscarried as a result of verbal intimidation by the defendant, brought suit in trespass for damages. *807 The Court upheld the action in trespass even though no physical violence had been done to her person:
"Nor is it important that no physical violence was done her person. The bodily pain and suffering which she endured was in direct line of causation from the alleged wrongful act of the defendant." 148 Ala. at 95, 41 So. at 1023.
Engle v. Simmons was subsequently quoted with approval in the later case of Disheroon v. Brock, supra, in which an elderly woman brought an action in trespass to recover for fright and mental distress brought on by defendant's illegal search and entry of her home. The Disheroon Court stated:
"In actions of trespass quare clausum fregit, `compensation may be recovered for resulting pain, fright, and mental suffering, shame and humiliation, inconvenience, and invasion of privacy. [Citation omitted.] As declared in Engle v. Simmons, [Citations omitted.],
"`The plaintiff here was in her home, and had a right to the peaceful and undisturbed enjoyment of the same, and any unlawful entry or invasion thereof, which produced physical injury to her, whether by direct physical violence, or through nervous excitement the proximate result of the wrongful acts of the defendant, was a wrong for which she is entitled to recover.'" 213 Ala. at 639-40, 105 So. at 901.
Despite Engle v. Simmons and Disheroon v. Brock, however, later cases, when faced with the trespass/trespass on the case issue, continued to mix the old terminology (distinguishing between direct and consequential force) with the new (distinguishing intentional and negligent conduct). Thus, the following from Crotwell v. Cowan, 240 Ala. 119, 198 So. 126 (1940):
"Under the common law, the foundation for civil liability for injuries to persons and property consequent upon the unintentional application of force, whether the act be affirmative or omissive, is negligence, and the appropriate common law action is case, speaking more correctly, trespass on the case. But when force is intentionally applied by direct affirmative act it is trespass and the appropriate action for the recovery of damages therefore is trespass." 240 Ala. at 121, 198 So. at 127.
The reluctance to wholly discard the causal terminology led, not surprisingly, to some ambiguous holdings which gave the appearance of reinstating the early common law distinction between trespass and trespass on the case but which, in reality, were decided on the basis of the intentional/negligent dichotomy.[2] Most notable among these cases is Pan American Petroleum Co. v. Byars, 228 Ala. 372, 153 So. 616 (1934), which was relied on and cited in Sasser v. Dixon, infra. In Pan American Petroleum Co., the plaintiff brought suit to recover damages for injury to land caused by leaking gasoline from defendant's storage tanks. The plaintiff stated her cause of action in four countsthree sounding in trespass on the case and the fourth in trespass. On appeal, the Alabama Supreme Court upheld the defendant's claim that the trial court had erred in refusing the defendant's written jury charge that there could be no recovery under the count for trespass. A careful reading of the court's holding *808 makes it clear that the court found no evidence sustaining intentional conduct by the defendant; however, this is obscured by language which appears to resurrect the former causal terminology:
"One count of the complaint was in trespass. There was no evidence in the case to sustain the count, and the court committed error in refusing defendant's written charge instructing the jury that there could be no recovery under this count of the complaint. The true distinction between trespass and trespass on case lies in the directness or immediate character of the injury. An injury is to be regarded as immediate, and therefore a trespass, only when it is directly occasioned by, and is not merely a consequence resulting from, the act complained of. Thus, it has been held that trespass is not the proper form of remedy, and case alone should be resorted to, when the defendant applies a running stream to such uses as to render it impure and fills it with a sediment which is deposited on the land of a lower proprietor ... in the absence of anything to show intention in causing the injury. [Citations omitted.]" (Emphasis added.) 228 Ala. at 376, 153 So. at 619.
It was not, however, until Sasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973), that the old common law causal terminology distinguishing between trespass and trespass on the case was fully restored. In that case, the plaintiff brought an action in trespass against a fellow employee and others for injuries received by the plaintiff as a result of defendants' conduct in wantonly failing to provide safe working conditions. The Supreme Court, in Sasser, quoted extensively from the Court of Civil Appeals in City of Fairhope v. Raddcliffe, 48 Ala.App. 224, 263 So.2d 682 (1972), as follows:
"`It seems to be commonly accepted among the bar that a count alleging a willful or wanton act is always a charge in trespass. Such is not literally true. To be a trespass there must be an act of direct force producing injury or damage. A wanton omission of duty to act is not a trespass. There is no direct force applied and the injury is not produced by application of force, but is consequential of an omission of a duty to act.
"`* * *
"`* * * We state again that it is not the descriptive words "willful or wanton" which determine an act to be in trespass, but whether the act producing injury was one of application of direct force. We comment that this construction is based upon well defined principles of common law and of the legislative designation of the applicable statute of limitations. We may not approve of it, but we are bound to so interpret and apply it until it is changed by proper authority.'" 290 Ala. at 20, 273 So.2d at 184, 185.
Both Sasser v. Dixon and City of Fairhope v. Raddcliffe were absolutely correct, of course, in stating that the historically accurate distinction between trespass and trespass on the case lies in whether the act producing injury was occasioned by direct or indirect force; and that the culpability of the actor's conduct was wholly irrelevant to this determination as it first appeared in the early English common law. Although neither court was wholly comfortable with the result, as is evidenced from the last above-quoted sentence, both felt obliged to adhere to the English common law distinctions in deference to what they believed was the legislative intent in employing twin conceptstrespass and trespass on the case. In view of the development of these concepts in Alabama law, however, I am not at all certain that the legislature, even at time the of its earliest enactment of the statute, in fact intended the earlier distinction to apply. Indeed, the shift in emphasis from the causal relation of the conduct to the injury to the culpability of the conduct, as early as Bell's Adm'r. v. Troy, decided in 1859, suggests that the legislature may not have intended the original English common law distinctions to apply.
One example will illustrate the fallacy of the direct/indirect application of force (immediate/consequential) test to distinguish between trespass and trespass on the case: *809 Take the homeowner whose property has been damaged by a quarry owner's blasting operations. From a single blast the house is virtually destroyed as a consequence of concussion and vibration. An examination of the wreckage reveals one golf ball size rock on the floor beneath a broken window pane. $30,000 in damages to the house was occasioned by the indirect force of concussion and vibration. $3.10 in damages was caused by the direct force of a rock's being hurled through the air by the blast.
Query: Does the Plaintiff have two separate causes of actionone claiming $30,000 damages for negligence (trespass on the case), governed by the one-year statute of limitations, and another claiming $3.10, plus punitive damages for trespass with six years to file suit? Or, does the one hurled rock transpose the otherwise negligent claim into a single cause of action for trespass in which Plaintiff may claim $30,003.10, plus punitive damages in any action filed within six years? In this latter event, the problem is compounded by the further inquiry: Are the punitive damages to be measured in relation to the $30,000 damages or to the $3.10 damages and with or without regard for the degree of the Defendant's culpable conduct?
The validity of the above example is not diminished by the use of a "trespass to real property" hypothesis. I discern no material difference between invasion or injury to person or property in the applicable test for determining the distinction between trespass and trespass on the case.[3] In the case of injury to either person or property, the direct application of force may be accompanied with less culpability than that accompanying an indirect application of force. For example, the physician who injects a manufacturer's mislabeled vaccine into the arm of his patient may be free of any culpable conduct, while the physician who prescribes the wrong drug may be guilty of the most extreme wanton act.[4] Yet, the immediate/consequential test for distinguishing trespass and trespass on the case renders the faultless physician accountable to a claim in trespass for six years, and the blameworthy physician subject to suit for only one year following his wrongful act.
Whatever vestige of the outmoded direct/indirect distinction between trespass and trespass on the case still exists in Alabama, I would now abandon and adopt instead the more modern tort concept of measuring the cause of action in terms of the degree of culpability of the alleged wrongful conduct. Wanton conduct, as that term is traditionally used and understood in the jurisprudence of our State, signifies the intentional doing of, or failing to do, an act, or discharge a duty, with the likelihood of injury to the person or property of another as a reasonably foreseeable consequence.[5] Such conduct, resulting in injury, is actionable in trespass and governed by the six-year statute of limitations, in my opinion.
The rationale for my view comports with the fundamental concepts of our fault-based system of tort law. One who injures another, or another's property, as a result of conduct intentionally committed should be held to a higher degree of accountability than one who injures another through a simple lack of due care. Just as the former, because of its higher degree of culpability, carries a potential for punitive damages, so should it also carry a longer period within which to enforce accountability for such intentional wrong. One who knowingly sets into motion, by intentionally doing (or failing to do) an act, a sequence of events resulting in reasonably foreseeable injury to another, whether the resulting injury is immediate or consequential, in my opinion, has committed a trespass within the contemplation of the six-year statute of limitations.
*810 Indeed, I have searched in vain for possible alternative policy considerations for limiting the period of accountability in certain tort cases to one year and in other cases to six years. I submit that the only logical, as well as the only defensible, basis for this difference is the extent of the wrong or the degree of culpability.
I, therefore, would reverse and remand.
NOTES
[1] Admittedly, this abbreviated historical account is an overly-simplified overview and is intended only as a backdrop for an analytical approach to the issue presented.
[2] This confusion is dramatized in the earlier case of City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389 (1903), where the averment, "`the defendant ... negligently caused an ice wagon ... to run against and strike plaintiff with great force,'" was construed as an allegation that "the injury, being a resultant of negligence, and not of intentional causation, would be indirect, wanting in the application of force, and consequential within the doctrine which distinguishes cases from trespass." Thus, attempting to accommodate the substantive law of torts to the traditional test for determination of the appropriate remedy, City Delivery created the nonsensical fiction of contrasting "unintentional" with "indirect." The two terms are opposites to the same extent as "apples" are to "green." In other words, apples may or may not be green. Similarly, negligent conduct may arise as the result of indirect force or direct force. City Delivery was consciously opting for the tort test of culpability, but it was unwilling to unshackle itself from the "direct/indirect" terminology.
[3] For a recent case on the nuisance/indirect trespass dichotomy, see Borland v. Sanders Lead Co., 369 So.2d 523 (Ala. 1979).
[4] This hypothetical example is used for illustrative purposes only. Physicians, in fact, are governed, with respect to their liability for professional malpractice, by a separate statute of limitations. See § 6-5-482, Ala.Code 1975.
[5] See Sington v. Birmingham Ry., Light & Power Co., 200 Ala. 282, 76 So. 48 (1917).