James CLOUD, et al., Plaintiffs,

v.

OLIN CORPORATION, a Virginia corporation, Defendant.

Marvelene T. FREEMAN, et al., Plaintiffs,

v.

OLIN CORPORATION, Defendant.

Erskin PARCUS, et al., Plaintiffs,

v.

OLIN CORPORATION, et al., Defendants.

Civ. A. Nos. CV79–PT–5128–NE, CV80–PT–5057–NE and CV80–PT–5098–NE.

United States District Court, N. D. Alabama, Northeastern Division.

Sept. 13, 1982.

William L. Chenault, III, Stephen V. Hammond, Chenault, Chenault & Hammond, Decatur, Ala., for Cloud, et al.

A. Stephens Clay, Robert E. Shields, Deborah A. Brian, Kilpatrick & Cody, Atlanta, Ga., for Freeman and Parcus, et al.

Charles E. Watkins, Jr., G. Lee Garrett, Jr., Trammell E. Vickery, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Donald F. Pierce, W. Alexander Moseley, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for Olin Corp.

## MEMORANDUM OPINION

PROPST, District Judge.

The court now considers defendant's first motion for summary judgment. Defendant's first motion asks that the court dismiss or strike the individual plaintiffs' claims for damages based on nuisance, negligence, and willful and wanton misconduct resulting from alleged injuries suffered prior to the date which is one year before their respective suits were filed. The com-

plaint(s) charges that the defendant allowed DDT to seep from a drainage ditch into Huntsville Spring Branch and Indian Creek and subsequently, via fish eaten by plaintiffs, into their bodies, resulting in physical and emotional injury. The complaint(s) also charge injury to land. The claims are couched in the form of various common law actions.

Defendant also requests that the court dismiss or strike any claims for damages based on trespass resulting from alleged injuries suffered prior to the date which is six years before the date their respective suits were filed.[1]

A threshold question which must be addressed is what is the statute of limitations with regard to these claims? The parties do not dispute the statute of limitations which should be applied to the negligence and nuisance claims. Both of these claims are unquestionably actions of trespass on the case and are governed by the statute of limitations for one year. *Sasser v. Dixon,* 290 Ala. 17, 273 So.2d 182 (1973); *Borland v. Sanders Lead Co.,* 369 So.2d 523 (Ala. 1979).[2] It is also undisputed that a pure trespass claim is governed by the six year statute of limitations. *Sasser, supra.*

█ The parties do dispute the statute of limitations which should be applied to the willful and wanton claims. Although, at one time, an attempt to synthesize Alabama law on this point would have required the services of a master of legal chemistry, recent developments have served largely to eliminate prior questions. This court will not undertake a turgid, academic analysis of the problem, but will focus primarily on cases of more recent vintage. For one interested in a history of the development, attention is called to Justice Jones' dissent in *Strozier v. Marchich,* 380 So.2d 804 (Ala. 1980). Also see *Doucet v. Middleton,* 328 F.2d 97 (5th Cir.1964).

In *Strozier,* Justice Jones recites a history of Alabama law which reflects a vacillation of earlier Alabama courts in distinguishing between trespass and case actions on the basis of (1) direct and indirect force, or (2) culpability or intent; although recognizing that *Sasser v. Dixon, supra,* restored "[t]he old common law *causal* terminology distinguishing between trespass and trespass on the case..." 380 So.2d at 808, Justice Jones further states, "Whatever vestige of outmoded direct/indirect distinction between trespass and trespass on the case still exists in Alabama, I would now abandon and adopt instead the more modern tort concept of measuring the cause of action in terms of the degree of culpability of the alleged wrongful conduct." 380 So.2d at 804.

The majority's *per curiam* opinion in *Strozier* affirmed on the authority of *Sasser v. Dixon, supra.* Since the majority in *Strozier* wrote no opinion, it is not apparent whether the claim was based on an intentional act of the defendant.[3] Notwithstanding the majority opinion, the Alabama Supreme Court, in a case predating *Strozier* by one year, had already gone far toward emasculating the direct/indirect test of *Sasser.* Without distinguishing *Sasser,*[4] the court in *Borland v. Sanders Lead Co., Inc.,* 369 So.2d 523 (1979), Justice Jones, this time writing for the majority, stated:

> In *Rushing v. Hooper-McDonald, Inc.,* 293 Ala. 56, 300 So.2d 94 (1974), this Court held, in a case of first impression, that a trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty. *Rushing* specifically held that a trespass is committed by one

---

1. Defendant asks, in the alternative, that the court hold as a matter of law that such damages cannot be recovered. The ultimate effect, of course, would be the same.

2. The remedies of trespass and nuisance are not necessarily mutually exclusive. *Borland, supra,* 369 So.2d at 527.

3. As late as 1981, the Alabama Supreme Court recognized that the direct/indirect distinction between trespass and case had not been "totally" overruled. *W.T. Ratliff Company, Inc. v. Henley,* 405 So.2d 141, 145 (Ala.1981).

4. *Sasser* was not cited in the case.

who knowingly discharges asphalt in such a manner that it will in due course invade a neighbor's realty and cause harm.

In *Rushing*, this Court cited with approval Restatement, Second, Torts, § 158, and particularly emphasized a portion of the Comments under this section, which recites:

" 'In order that there may be a trespass under the rule stated in this Section, it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in entry of foreign matters.' "

369 So.2d at 527.

The court in *Borland* cited with approval the case of *Martin v. Reynolds Metals Co.*, 221 Or. 86, 342 P.2d 790, *cert. denied*, 362 U.S. 918, 80 S.Ct. 672, 4 L.Ed.2d 739 (1959), and quoted it as saying:

The force is just as real if it is chemical in nature and must be awakened by the intervention of another agency before it does harm.

"If, then, we must look to the character of the instrumentality which is used in making an intrusion upon another's land we prefer to emphasize the object's energy or force rather than its size. Viewed in this way we may define trespass as an intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist.

"We are of the opinion, therefore, that the intrusion of the fluoride particulates in the present case constituted a trespass."

369 So.2d at 528. The *Borland* court further stated that:

Whether an invasion of a property interest is a trespass or a nuisance does not depend upon whether the intruding agent is "tangible" or "intangible." Instead, an analysis must be made to determine the interest interfered with. If the intrusion interferes with the right to exclusive possession of property, the law of trespass applies. If the intrusion is to the interest in use and enjoyment of property, the law of nuisance applies. As previously observed, however, the remedies of trespass and nuisance are not necessarily mutually exclusive.

.    .    .    .    .

In order to recover in trespass for this type of invasion [i.e., the asphalt piled in such a way as to run onto plaintiff's property, or the pollution emitting from a defendant's smoke stack, such as in the present case], a plaintiff must show 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the res.

.    .    .    .    .

For an indirect invasion to amount to an actionable trespass, there must be an interference with plaintiff's exclusive possessory interest; that is, through the defendant's intentional conduct, and with reasonable foreseeability, some substance has entered upon the land itself, affecting its nature and character, and causing substantial actual damage to the res.

369 So.2d at 529–530 (footnotes omitted).

Any doubt as to whether *Sasser via Strozier* might prevail over *Borland* was eliminated in *W.T. Ratliff Company, Inc. v. Henley, supra.* In *Ratliff* the court stated:

If we were to apply the strict historical distinctions, the facts of the case at bar would show an action for trespass on the case, rather than trespass. The record clearly states that sand and gravel flowed from Ratliff's operations onto Henley's property whenever it rained. Thus, the consequential damages to the property was occasioned by an intervening agency, the rain. No direct act of force on the part of Ratliff caused the damage. The strict common law distinctions between the two remedies, however, have been modified during the past decade.

405 So.2d at 145. The Court recognized that *Borland* "[w]ent a step beyond *Rushing*," saying:

Our analysis in *Rushing* could not be interpreted as totally overruling the direct/indirect distinction between trespass and case that had always been adhered to in cases preceding *Rushing*. *See, e.g., Sasser v. Dixon,* 290 Ala. 17, 273 So.2d 182 (1973). Instead, *Rushing* merely pointed out that a direct injury may be found even though the trespassing matter was not placed directly on plaintiff's land, as long as the flow to plaintiff's land was direct. In *Borland v. Sanders Lead Co., Inc.,* Ala., 369 So.2d 523 (1979), however, we went a step beyond *Rushing* and clearly stated that "the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect." *Id.* at 529. *Borland* established four elements which a plaintiff must prove in order to recover for an indirect trespass:

1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the res. [*Id.* at 529].

405 So.2d at 145.

The Court amplified the "intentional doing of the act which results in the invasion" by saying:

That is, the *intent to do the act* which leads to the trespass is the requirement, not the intent to actually trespass. Thus, when Ratliff placed the sand and gravel on its own leased property with knowledge to a substantial certainty that such action could lead to trespass when it rained, the element of intent was satisfied.

. . . .

Although Ratliff contends that the trial court erred in refusing to grant a directed verdict in favor of it on the wantonness count, the evidence in the record reveals otherwise. All that need be shown to prove wantonness in a trespass action is knowledge on the part of the defendant of his invasion of the plaintiff's rights. *Calvert and Marsh Coal Co., Inc. v. Pass,* Ala., 393 So.2d 955, 956 (1980).

405 So.2d 146 (emphasis in original).

However tortured the history may have been, this court is satisfied that the strict direct/indirect approach has been unquestionably modified by *Ratliff* and its predecessors and that the four *Ratliff* elements represent the present concise statement on the point.[5] Under the circumstances of this case, this court cannot determine, as a matter of law, that the one year statute applies to the willful and wanton claims in this case.[6] If the evidence shows that the defendant intentionally did acts which it could have reasonably foreseen would result in the invasion of plaintiffs' property or person, the six year statute would likely apply, assuming substantial damage.

Defendant argues that the *Ratliff* principles apply only to trespass to land and not to person. There is no indication that the Supreme Court of Alabama has ever made such a distinction. The fact that *Ratliff, Borland,* and *Rushing* involved only claims for injury to land, does not indicate that the principles are so restricted. In *Doucet v. Middleton, supra,* Judge Rives said:

It would seem incongruous for the Legislature of Alabama to allow six years for the commencement of an action for trespass to property and only one year for

---

**5.** It may still be the law of Alabama that a wanton omission of a duty to act resulting in indirect injury would support only an action in case. See *Sasser, supra,* and *City of Fairhope v. Raddcliffe,* 48 Ala.App. 224, 263 So.2d 682 (Civ.App.1972). Whether the complained of act in this case is one of commission or omission is a question of fact.

**6.** Wantonness is the legal equivalent of willful and intentional. See *Doucet v. Middleton,* 328 F.2d 97, 102, 103 n. 12. For a discussion of the general principles, see Prosser, Torts, §§ 7–8 (4th ed. 1971).

trespass to person. As applied to Doucet's complaint, it would be anomalous to hold that his action for personal injuries is barred by limitations but that he may prosecute his action for damages to his automobile.

328 F.2d at 103. This court agrees.[7]

The more difficult question remains as to the period for which damages are recoverable. The leading case which addresses this point is *Garrett v. Raytheon,* 368 So.2d 516 (Ala.1979). The point is also discussed in *Tutwiler Coal, Coke & Iron Co. v. Nichols,* 145 Ala. 666, 39 So. 762 (1905); *Howell v. City of Dothan,* 234 Ala. 158, 174 So. 624 (1937); and *Garren v. Commercial Union Ins. Co.,* 340 So.2d 764 (Ala.1976).

*Garrett,* being a recent case and not yet overruled, is controlling on this court. Its true meaning and its ultimate application in this case are more difficult to discern. The key language of *Garrett* is the following:

> When does the statute of limitations begin to run for injuries suffered as a result of radiation exposure?[8] We conclude that it begins to run when the plaintiff is exposed to radiation *and an injury occurs.*

368 So.2d at 517 (emphasis added), and,

> The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action accrues. The cause of action "accrues" as soon as the party in whose favor it arises is entitled to maintain an action thereon.

> "We have held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. In *Kelly v. Shropshire,* 199 Ala. 602, 75 So. 291, 292 (1971), the rule was stated as follows:

> " 'If the act of which the injury is the natural sequence is of itself a legal injury

to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort of injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.'

> "Nor do the cases cited to us by appellant Home modify this rule. *Corona Coal Co. v. Hendon,* 213 Ala. 323, 104 So. 799 (1925) (flooding of basement causing rusting of heating plant) and *West Pratt Coal Co. v. Dorman,* 161 Ala. 389, 49 So. 849 (1909) (underground mining causing subsidence of surface land) merely state the well established rule that the statute will not begin to run until some injury occurs which gives rise to a maintainable cause of action.

. . . . .

> Thus, there are cases where *the act complained of does not itself constitute a legal injury at the time,* but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues," and the statute of limitation begins to run, "when, and only when the damages are sustained." Over sixty years ago, Justice Sayre so expressed it in his opinion for the Court in *Kelly,* et al. v. Shropshire, 199 Ala. 602, 75 So. 291 (1917). (Emphasis added.)

. . . . .

However, the court is of the opinion that any such exposure must result in more than a *de minimis* injury since the cause of action does not accrue until there has been substantial injury.

---

7. See Restatement (Second) of Torts, § 500.

8. Without regard to the relative known effects of radiation and DDT, the court is satisfied that the same principles would apply in the case of exposure to radiation and ingestion of DDT.

The same rule has long been followed in this state with reference to medical malpractice. In *Hudson v. Moore,* 239 Ala. 130, 194 So. 147 (1940), this Court held, in an opinion authored by Justice Bouldin, that *neither difficulty* of ascertainment nor *ignorance* of the cause of action will toll the statute of limitations unless superinduced by *fraud.* In *Hudson v. Moore,* plaintiff sought damages in 1938 for an alleged negligent act in 1923 of leaving a gauze sponge in a patient's body after a gall bladder operation. The court held the statute had run.

.    .    .    .    .

Thus, in Alabama the so-called "Discovery Rule" has been specifically rejected by this Court in medical and professional malpractice suits.

.    .    .    .    .

In *Garren v. Commercial Union Insurance Co.,* 340 So.2d 764 (Ala.1976), we defined "date of injury" for statute of limitations purposes to be the day on which the plaintiff was last exposed to the damages which injured her. Justice Faulkner points out that this definition was derived from the workmen's compensation act. It is incorrect, however, to assume that this ipso facto changes the definition of "date of injury" for non-workmen's compensation cases.

.    .    .    .    .

The injury in this case occurred on the date or dates of exposure. This is not a case where an injury did not occur until it made itself manifest by its symptoms. Among our cases, continuous tort cases are significant in the limitation of actions context. It was thus that in *American Mutual Liability Insurance Co. v. Agricola Furnace Co.,* 236 Ala. 535, 183 So. 677 (1938), this Court held that recovery for a continuous tort could be had only for those damages which occurred within the period of limitations. See also *Howell v. City of Dothan,* 234 Ala. 158, 174 So. 624 (1937). The cause of action was, therefore, not barred by the statute of limitations until one year after the last day on which the plaintiff was exposed to the dangerous conditions which caused the injury. *Minyard v. Woodward Iron Co.,* 81 F.Supp. 414 (N.D.Ala.), aff'd, 170 F.2d 508 (5th Cir.1948). This was, and is, the rule in all cases concerning continuous torts in Alabama.

368 So.2d at 518–521 (emphasis in original).

The *Garrett* majority, while acknowledging that an action does not "accrue" until the first legal injury,[9] assumed that the injury "[o]ccurred on the date or dates of exposure."[10]

Based on the principles espoused by the majority, *Garrett* did not present a difficult case for decision in that the last date of exposure was outside the limitations period.[11] This, plus the assumption of injury concomitant with exposure, left no open question.

The court cited *Howell, supra,* as holding "[t]hat recovery for a continuous tort could be had only for those damages which occurred within the period of limitations." 368 So.2d at 521. The court did not discuss whether a portion of such later occurring damages could be mental anguish. The Alabama Supreme Court has recognized that punitive damages may be recoverable if only nominal compensatory damages are recoverable. *Rushing v. Hooper McDonald,* 293 Ala. 56, 61, 300 So.2d 94 (1974).

■ Notwithstanding the possible confusion created by the majority in *Garren, supra,* by ascribing a workmen's compensation statute to a common law action,[12] this court gleans the following legal principles from *Tutwiler, Howell, Garren,* and *Garrett* which are applicable to this case.

**9.** 368 So.2d at 519.

**10.** 368 So.2d at 520. Justice Shores, in dissent, questioned this assumption. 368 So.2d at 525.

**11.** Garrett assumed a one year statute of limitations. Although plaintiff alleged a willful and wanton injury in Count Two, the Court did not discuss the possibility of a six year limitations period.

**12.** Discussed at length by Justice Jones in his *Garrett* dissent.

(1) That any damages which "accrued" prior to the beginning date of the applicable statute of limitations are barred.[13]

(2) The applicable limitations period would begin to run on the date of exposure which resulted in more than a *de minimis* [14] injury, whether known or unknown or discoverable by a plaintiff.

(3) Much latitude and discretion are allowed to the juries in the separation of the barred damages and the non-barred damages.

Defendant's first motion for summary judgment could well be considered a motion for an advisory opinion. In view of the factual questions which pervade the issues discussed above, summary judgment is not appropriate. However, the court does deem it appropriate that it use this occasion to consider the problems which will face the court at the time of trial in assessing the testimony, instructing the jury and framing special interrogatories. To the extent that the motion for summary judgment asks for an advisory ruling that damages accruing outside the applicable limitations period beginning with the "accrual" of the cause of action will be barred, it will be granted. However, this should not be construed as resolving factual questions relating to what the appropriate limitations period is or when the cause begins to accrue.[15]

The court does not deem it appropriate to address, at this stage, the question of fraudulent concealment. The issue was not clearly framed in the first motion for summary judgment.

Defendant argues that although the statute of limitations may be tolled until the minor plaintiffs reach majority, their claims for damages which accrued prior to the beginning date of the applicable statute of limitations are barred. No authority is cited for this proposition and the court finds it to be unpersuasive.

Within one week after entry of this memorandum opinion, defendant should suggest an appropriate order consistent with this opinion. Plaintiffs will have one week to respond. Thereafter, the court will enter an order.

**13.** As indicated above, the applicable statute for the nuisance and negligence claims is one year, and for the trespass claim is six years. The limitations period with regard to the willful and wanton claims (either one year or six years) depends on jury findings as to intent, foreseeability, etc.

**14.** See *Borland* and *Ratliff*. In addition, this is consistent with the holding in *Garren* that "[t]he statute of limitations begins to run from the date of injury which is defined in § 313(42) as date of the last exposure to the hazards of the disease *which gave rise to the injury.*" 340 So.2d at 765 (emphasis added.) The Alabama Supreme Court has held that in order for a cause of action to "accrue" there must be substantial damage. *Borland, supra,* 369 So.2d at 529. *Ratliff, supra,* 405 So.2d at 145. Also see *Garrett* where the Court held that "[t]he statute will not begin to run until some injury occurs which gives rise to a *maintainable* cause of action." 368 So.2d at 519 (emphasis added). See *Tutwiler, supra,* 39 So. at 764. Presuma-

bly, this could include separable mental anguish, if any. *Howell, supra,* indicates that such damages must be reasonably separable. The burden will be on plaintiff, at the trial, to establish such reasonable separation. See *Howell, supra,* and *Minyard v. Woodward Iron Co.,* 81 F.Supp. 414 (N.D.Ala.), *aff'd,* 170 F.2d 508 (5th Cir.1948). Punitive damages may be recoverable if only nominal damages are proved within the applicable period. It may be that the date of *last* exposure is the date of injury, and "accrual," whether or not substantial injury has occurred. *Commercial Union Assurance Co. v. Zurich American Ins. Co.,* 471 F.Supp. 1011 (S.D.Ala.1979).

**15.** The burden at trial will be on plaintiffs to establish the "accrual" date. *Cities Service Oil Co. v. Griffin,* 357 So.2d 333, 341 (Ala.1978). However, this court cannot decide, as a matter of law as was done in *Garrett, supra,* that injury and exposure occurred at the same time.