STUART, Justice.
The United States Judicial Panel on Multi-District Litigation consolidated in the United States District Court for the Northern District of Ohio, Eastern Division (“the MDL court”), approximately 1,800 cases involving claims seeking dam *3 ages for personal injuries allegedly caused by exposure to welding fumes. In re Welding Rod Products Liability Litigation, 269 F.Supp.2d 1365 (J.P.M.L.2003). Several dozen of those cases are governed by Alabama law, and the MDL court has identified three issues of Alabama law that may be determinative in those cases, yet, the MDL court states, there is no clear, controlling precedent in the decisions of this Court resolving those issues. Accordingly, the MDL court has certified three questions to this Court pursuant to Rule 18, Ala. R.App. P. We answer those questions below.
I.
“As a general matter, the plaintiffs in the [In re] Welding Fume[s Prods. Liab. Litig., MDL No. 1533 (‘Welding Fume’),] cases all allege that: (1) they inhaled fumes given off by welding rods; (2) these fumes contained manganese; and (3) this manganese caused them to suffer permanent neurological injury and other harm. The Welding' Fume plaintiffs name as defendants various manufacturers, suppliers, and distributors of welding rod products, and claim the defendants knew or should have known that the use of welding rods would cause [this damage]. The plaintiffs generally bring claims sounding in strict product liability, negligence, fraud, and conspiracy. The gravamen of the complaints is that the defendants ‘failed to warn’ the plaintiffs of the health hazards posed by inhaling welding fumes containing manganese and, in fact, conspired to affirmatively conceal these hazards from those engaged in the welding process.
[[Image here]]
“This MDL court has presided over trials of several ‘bellwether cases.’ The instant case, Jerkins v. Lincoln Electric Co., was slated for a bellwether trial in July of 2010. Jerkins named as defendants, among others, four welding rod manufacturers: (1) the Lincoln Electric Company; (2) Hobart Brothers Company; (3) the ESAB Group, Inc.; and (4) Sandvik, Inc. The court refers below to these manufacturers collectively as the ‘Principal Defendants.’
“The claims Jerkins asserted against the Principal Defendants that remained for trial were: (1) [a claim under the] Alabama Extended Manufacturer’s Liability Doctrine; (2) negligent failure to warn; (3) wanton failure to warn; and (4) sale of unreasonably dangerous product. Jerkins sought both compensatory and punitive damages.
“Before trial, the Principal Defendants filed a motion for summary judgment, arguing that all of Jerkins’ claims were barred by the applicable statutes of limitations. The parties agreed that many relevant facts were not in dispute, including these:
“• Jerkins began welding in 1979.
“• Jerkins’ exposure to welding fumes was essentially continuous from 1979 through about 2008.
“• Jerkins filed suit on April 21, 2004.
“There remains a dispute of fact regarding precisely when Jerkins first began to experience symptoms of his alleged neurological injury (and, thus, when the relevant welding fume exposures — that is, those that allegedly caused his injury — occurred). There is some evidence that Jerkins suffered tremors and seizures as early as 2000, and other evidence that these symptoms did not appear until as late as 2003. When this court examined the pretrial *4 record in a light most favorable to Jerkins (as it must when ruling on a motion for summary judgment), the court concluded that a reasonable jury could find Jerkins’ symptoms did not manifest until sometime within the two-year period that preceded the date he filed his lawsuit — and, thus, that a reasonable jury could find at least some of the allegedly injury-producing exposures occurred within the limitations period.
“Having reached this conclusion, however, this court was still faced with several issues related to application of the Alabama statutes of limitations. First, the Principal Defendants argued Jerkins was allowed to recover damages attributable only to the exposures he suffered during a two-year limitations period (beginning on April 21, 2002); Jerkins argued he was allowed to recover damages attributable to all of his welding fume exposures, going back to when he started welding in 1979. Second, Jerkins further argued that, even if the Principal Defendants were correct that his damages were limited to exposures he suffered during the limitations period, the applicable period was six years, not two. And finally, even if the Principal Defendants were correct that Jerkins’ damages were limited to exposures he suffered during the limitations period, the parties disagreed over whose burden it was to prove what portion of the damage[ ] occurred inside the limitations period.
[[Image here]]
“In light of the discussion above, the undersigned now certifies the following questions to the Supreme Court of Alabama.
“1. In a case where the plaintiff seeks damages caused by long-term, continuous exposure to an allegedly toxic substance, does the law of Alabama applicable before Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008), limit the plaintiff to recovery of damages attributable only to exposures that occurred within the limitations period?
“2. Does the six-year statute of limitations for wantonness claims adopted by the Alabama Supreme Court in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), apply: (1) prospectively to claims that were filed after McKenzie was decided; (2) retroactively to claims that accrued no earlier than two years before McKenzie was decided; or (3) in some other fashion?
“3. If the answer to question 1 is ‘yes,’ does the law of Alabama impose the burden upon the plaintiff or upon the defendant to prove the amount of damage!], if any, attributable to exposures that occurred within the applicable limitations period, versus the amount of damage[ ], if any, that [is] attributable to exposures that occurred outside of the applicable limitations period?”
(Footnotes omitted.) By order dated September 20, 2010, we accepted the certified questions, and briefs have been filed by Jerkins, the defendant welding-rod manufacturers, and amici curiae the Business Council of Alabama and the Alabama Defense Lawyers Association.
II.
At the outset, we take the liberty of rephrasing the first question as follows so that the response we give accurately states Alabama law:[1]
*5 1. In a case where the plaintiff seeks damages for injuries caused by long-term continuous exposure to an allegedly toxic substance, does the law of Alabama applicable before Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008), limit the plaintiff to recovery of damages for only those injuries that occurred within the limitations period?
As the MDL court correctly noted in the first certified question, the law that applies to Jerkins’s claims is the law that existed in Alabama before this Court’s decision in Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008). In Griffin, this Court overruled decades of caselaw to hold that a cause of action in which damages are sought for injuries sustained as a result of exposure to toxic substances accrues only when a manifest injury stemming from that exposure presents itself. 990 So.2d at 293. Before Griffin, this Court had applied the rule encapsulated in Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), that a cause of action based on exposure to a toxic substance accrues on the date of the last exposure to that toxic substance — even if there is no manifest injury at that time. Although Griffin explicitly overruled Garrett, it also provided that its holding would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in Griffin. Griffin was decided in January 2008; thus, Jerkins’s action, filed in April 2004 and based on injuries occurring before that date, is outside the scope of Griffin.
Under the continuous-exposure rule of Garrett, the statutory period of limitations for a continuous tort begins to run from the “date of injury,” 368 So.2d at 520, which is “the last day on which plaintiff was exposed to the danger.” Garren v. Commercial Union Ins. Co., 340 So.2d 764, 766 (1976). The parties in this case have stipulated that Jerkins’s exposure to welding fumes was essentially continuous from 1979 through about 2008, and he filed the underlying action on April 21, 2004. Thus, Jerkins’s action is clearly not barred by the statute of limitations, and the fundamental issue is therefore what restriction is placed upon his recovery of damages by pre-Griffin law.
This Court’s pre-Griffin caselaw provides ample authority to support the proposition advocated by the defendant welding-rod manufacturers that a party alleging injury as a result of long-term exposure to a toxic substance can recover only damages attributable to injuries that occurred within the relevant limitations period.[2] This principle has been clearly stated in Garrett, 368 So.2d at 521 (“Among our cases, continuous tort cases are significant in the limitation of actions context. It was thus that in American Mutual Liability Insurance Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677 (1938), this Court held that recovery for a continuous tort could be had only for those damages which occurred within the period of limitations.”), as well as Garren, 340 So.2d at 766 (affirming the trial court’s judgment in an action where the plaintiff alleged that she had been injured as a result of continuously breathing dust and lint at her workplace over several years and stating that “any *6 damages to which plaintiff might otherwise be entitled could not include those for any injuries suffered by plaintiff more than one year prior to [the date of filing suit]”), and American Mutual Liability Insurance Co. v. Phillips, 491 So.2d 904, 908 (Ala.1986) (holding that the “defendants were entitled to an order limiting plaintiffs potential recovery to damages occurring within the year next preceding the filing of this action” where the action alleged that the plaintiff had been injured by inhaling cotton fibers at the mill where she. worked), among other cases.[3] Jerkins, however, argues that the principle articulated in these cases (1) is contrary to the plain language of the relevant statute of limitations, § 6-2-38(1), Ala.Code 1975; (2) was rejected by this Court even before Griffin; and (3) is unfair, irrational, and potentially unconstitutional. With regard to Jerkins’s final argument, we note that the members of this Court thoroughly reviewed the state of the law with regard to injuries stemming from exposure to toxic substances fairly recently in both Griffin and Cline v. Ashland, Inc., 970 So.2d 755, 761 (Ala. 2007). Arguments similar to the arguments now made by Jerkins were made in those cases, and this Court considered the relevant constitutional and public-policy issues in those cases.[4] As Justice See, concurring specially in Cline, 970 So.2d at 757, stated:
“The determination of when the statute of limitations ought to begin to run in toxic-substance-exposure cases depends on a weighing of competing public policies. We seek in Alabama to compensate those who have been injured. Ala. Const.1901, Art. I, § 13 (‘[T]hat every person, for any injury done him ... shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.’). On the other hand, we also seek to avoid stale claims and the injustice such claims can engender. Travis v. Ziter, 681 So.2d 1348, 1355 (Ala.1996) (‘At its core, the statute of limitations advances the truth-seeking function of our justice system, promotes efficiency by giving plaintiffs an incentive to timely pursue claims, and promotes stability by protecting defendants from stale claims.’). The proper balance between these competing public policies requires a weighing....”
This Court resolved those issues in Griffin, and we are not now inclined to revisit them, nor are we inclined to accept Jerkins’s invitation to reconsider the prospective application of Griffin. His first two arguments, however, are discussed in more detail below.
Section 6-2-38(i) provides that “[a]ll actions for any injury to the person or rights of another not arising from contract and *7 not specifically enumerated in this section must be brought within two years.” Jerkins argues that the plain language of this statute imposes no limitation on damages and that this Court is therefore prohibited from reading such a limitation into the statute. See Ex parte Carlton, 867 So.2d 382, 338 (Ala.2003) (“[T]his Court is not at liberty to rewrite statutes or to substitute its judgment for that of the Legislature.”). Therefore, he argues, he is entitled to recover damages for injuries that occurred even outside the limitations period. We disagree; as this Court explained in Cazalas v. Johns-Manville Sales Corp., 435 So.2d 55, 57 (Ala.1983), such a limitation on damages is implicit in any statute of limitations.
In Cazólas, this Court considered the effect of § 6-2-30(b), Ala.Code 1975, which was enacted by the legislature following this Court’s decision in Garrett and which expressly provided that all actions arising out of exposure to asbestos were not deemed to have accrued until “the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action.” After the Mobile Circuit Court subsequently held that 25 individuals suing based on injuries received as a result of exposure to asbestos were limited in the damages they were entitled to recover to those exposure-caused damages occurring within one year of the filing of their action, this Court reversed that judgment and held that the plaintiffs were entitled to recover for all injuries proximately caused by exposure to asbestos, stating:
“The trial court’s ruling stems from a misunderstanding of the continuing tort rule of damages. While a plaintiff in a negligence action is typically limited to damages for injuries incurred within one year of filing suit, the rule does not, as the trial court suggested, operate independently of the statute of limitations. To the contrary, it is a function of the statute of limitations. Under § [6-2-30], the plaintiff is entitled to recover all damages which proximately flowed from his injury if his action is brought within the statutory period of limitations, notwithstanding Commercial Union Assurance Co. v. Zurich American Ins. Co., 471 F.Supp. 1011, 1015 (S.D.Ala.1979); Garrett v. Raytheon Co., 368 So.2d 516, 521 (Ala.1979); American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 538, 183 So. 677, 679 (1938).”
435 So.2d at 57. Jerkins’s claims, however, are not asbestos-related claims subject to § 6-2-30; rather, his claims are subject to the statute of limitations set forth in § 6-2-38(i) and, as Cazólas indicates, an implicit “function” of that statute of limitations is that Jerkins is now limited to seeking damages attributable to injuries that occurred within the period of limitations.
Jerkins next argues that this Court has rejected the holding reaffirmed in Garrett that “recovery for a continuous tort could be had only for those damages which occurred within the period of limitations,” 368 So.2d at 521, even before Griffin was decided, most notably in Hillis v. Rentokil, Inc., 596 So.2d 888 (Ala.1992). In Hillis, a lumber-company employee alleged that he had been injured as a result of prolonged exposure to chromated copper arsenate (“CCA”) during the course of his employment from September 1985 to December 31, 1987. The employee had been treated for maladies he later attributed to CCA in July 1986 and August 1987; however, it was not until September 25, 1987, that he was advised by his primary physician to visit a dermatologist because of an allergic reaction to CCA. He then continued to work at the lumber company until his employment was terminated on December 31, *8 1987, and, on November 15, 1989, he filed an action seeking damages for injuries allegedly suffered as a result of his exposure to CCA. The defendants thereafter moved for a summary judgment, arguing that the employee’s action was barred by the two-year statute of limitations because he was aware of his injuries by, at the latest, September 25, 1987 — when his physician referred him to a dermatologist— yet he did not file his complaint until November 15, 1989. The trial court granted the motion and entered a summary judgment; however, this Court subsequently reversed that judgment, stating:
“According to Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), and American Mutual Liability Insurance Co. v. Phillips, 491 So.2d 904 (Ala.1986), the statutory period of limitations for a continuous tort begins to run from the ‘date of injury.’ The ‘date of injury’ for statute of limitations purposes is ‘the day on which the plaintiff was last exposed to the damage[].’ Garrett, 368 So.2d at 520. In this case, the last day [the plaintiff] was exposed to CCA was December 31, 1987, the date he was terminated from his job. Because [the plaintiff] filed this action on November 15, 1989, his tort claims were not barred by the statute of limitations.”
596 So.2d at 890. Thus, the plaintiff in Hillis was considered to have been injured both within and outside the limitations period, yet, Jerkins argues, this Court made no distinction between those injuries and placed no limitations on the damages available to him, stating only that “his tort claims were not barred by the statute of limitations.” Id. The defendant welding-rod manufacturers acknowledge that Hillis was correctly decided because the injuries the plaintiff suffered from November 15, 1987, through his termination on December 31, 1987, did, in fact, occur within the limitations period; however, they argue that the Court failed to expressly limit his damages to injuries occurring after November 15, 1987, merely because such a limitation was implicitly understood by all the parties. We agree. If Hillis did, in fact, effect a sea change in this area of law and overrule at least to some extent Garrett and its progeny, as Jerkins now argues, it would have done so explicitly. See Liberty & Prosperity 1776, Inc. v. Corzine, 720 F.Supp.2d 622, 629 (D.N.J.2010) (“The Supreme Court would not have'made such a sweeping change to the law by implication.”). The rule limiting the recovery of damages to those resulting from injuries occurring within the period of limitations was not changed between this Court’s release of its opinion in Garrett and its release of the opinion in Griffin; thus we must answer the first certified question in the affirmative.
III.
The second certified question concerns the MDL court’s application of McKenzie v. Killian, 887 So.2d 861 (Ala. 2004), to Jerkins’s wantonness claims. In McKenzie, this Court overruled Sasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973), and succeeding cases and held that wantonness claims are subject to the six-year statute of limitations set forth in § 6-2-34(1), Ala.Code 1975, as opposed to the two-year statute of limitations set forth in § 6-2-38(1 ). 887 So.2d at 870. The MDL court now seeks guidance as to whether McKenzie should be applied (1) prospectively to claims filed after McKenzie was decided; (2) retroactively to claims that accrued no earlier than two years before McKenzie was decided; or (3) in some other fashion.
This Court recently reconsidered McKenzie in Ex parte Capstone Building Corp., [Ms. 1090966, June 3, 2011] — *9 So.3d-,-(Ala.2011), and held that that case had been erroneously decided, concluding:
“[W]e overrule McKenzie to the extent that it holds that a claim of wantonness falls within the six-year statute of limitations now found in § 6-2-34(1). We once again reaffirm the proposition that wantonness claims are governed by the two-year statute of limitations now embodied in § 6-2-38(1 ).” 
We also stated, however, that, for reasons of equity and justice, our holding should not be applied retroactively so as to “deprive [affected parties] of a vested right •without granting them any opportunity to preserve it.” — So.3d at-. We accordingly provided the following instruction on how to apply our holding in Ex parte Capstone to other litigants:
“The above-discussed principles require that we not apply our ruling today retroactively so as to immediately cut off the claims of persons who have been wantonly injured within the last six years and who therefore have been entitled to rely upon the rule this Court announced in McKenzie. Thus, for a person as to whom the six-year limitation period previously announced by this Court will, under the rule announced today, expire on a date less than two years from today’s date, we conclude that it is just and equitable that the limitations period not be affected by today’s decision. For a person whose limitation period would expire more than two years from today, however, equity does not require that that person have more time to bring their action than would a party whose cause of action accrues on the date of this decision. In other words, as a result of our holding, litigants whose causes of action have accrued on or before the date of this decision shall have two years from today’s date to bring their action unless and to the extent that the time for filing their action under the previously announced six-year limitations period would expire sooner.” 
— So.3d at-. Jerkins and any other Alabamians with wantonness claims now pending before the MDL court filed those claims before McKenzie was overruled by Ex parte Capstone. Applying the prospective nature of our decision in Ex parte Capstone to their cases, we accordingly conclude that a six-year period of limitations should apply to those wantonness claims. Whether the wantonness claims of other individuals are subject to the two-year or six-year statute of limitations should therefore be determined based on whether those claims were asserted pre- or post-i7x parte Capstone.
IV.
Having established in our answer to the first certified question that *10 Jerkins is limited to recovering damages only for those injuries occurring within the limitations period, we must also consider the final issue raised by the MDL court: whether the burden falls upon Jerkins or the defendant welding-rod manufacturers to prove what injuries occurred within the applicable six-year limitations period. In Johnson v. Harrison, 404 So.2d 337, 340 (Ala.1981), this Court stated the general principle regarding which party bears the burden of proving damages:
“The rule has long been established that the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence. Smith v. Richardson, 277 Ala. 389, 171 So.2d 96 (1965). The award of damages cannot be made upon speculation, and the plaintiff has the burden of offering evidence tending to show to the required degree, the amount of damages allegedly suffered. Great American Insurance Co. v. Railroad Furniture Salvage of Mobile, Inc., 276 Ala. 394, 162 So.2d 488 (1964).”
This principle would appear to place the burden upon Jerkins to prove what damages he is entitled to recover as a result of injuries occurring within the applicable six-year limitations period; however, Jerkins argues that the defendant welding-rod manufacturers’ assertion of the statute of limitations as an affirmative defense shifts that burden to them because they must prove each element of that defense. See Lands v. Lull Int’l, Inc., 963 So.2d 626, 629 (Ala.2007) (stating that the burden is on the party moving for a summary judgment on the basis of the statute of limitations to establish that there was no genuine issue of material fact as to any element of that defense). This argument is misguided, however, because a plaintiffs damages are never an element of an asserted defense — affirmative or otherwise; rather, as stated above, it is the plaintiffs responsibility to prove damages.
Moreover, this Court has previously considered the issue raised by the third certified question and has held that the burden of proving what damages are recoverable remains with the plaintiff even when some of the plaintiffs claims have been determined to be time-barred. In Chatham v. CSX Transportation, Inc., 613 So.2d 341 (Ala.1993), this Court considered a railroad employee’s claim for damages based on a hearing loss he allegedly suffered as a result of years spent working in the train yard. We held that the employee could not recover for injuries that occurred outside the three-year limitations period set forth in the Federal Employers’ Liability Act, which governed his claims, but that he could “claim damages for aggravation of his hearing loss if he [could] show a deterioration in his hearing caused by his work environment during the three years before he filed this action.... ” 613 So.2d at 346 (emphasis added). The United States District Court for the Northern District of Alabama likewise recognized this principle in Cloud v. Olin Corp., 552 F.Supp. 528, 534 n. 14 (N.D.Ala.1982), when, after stating that the plaintiff could recover damages for mental anguish associated with his timely — but not his untimely — claims, stated that “[t]he burden will be on plaintiff, at the trial, to establish such reasonable separation.” Accordingly, we hold that a plaintiff injured by long-term continuous exposure to a toxic substance bears the burden of proving what injuries he suffered within the limitations period as a result of his exposure to that substance and what the appropriate damages for those injuries should be.
V.
The MDL court certified three questions to this Court pursuant to Rule 18, Ala. *11 R.App. P. Our answer to those questions may be summarized as follows:
1. A plaintiff injured by long-term continuous exposure to a toxic substance is limited to recovering damages attributable to injuries occurring within the period of limitations.
2. In Ex parte Capstone, this Court overruled McKenzie to the extent it held that wantonness claims are subject to a six-year statute of limitations. However, we also declined to apply that holding retroactively. A six-year limitations period therefore applies to wantonness claims filed before Ex parte Capstone was released.
3. A plaintiff injured by long-term continuous exposure to a toxic substance bears the burden of establishing what damages, if any, are attributable to injuries occurring within the limitations period as opposed to injuries occurring outside that limitations period.
QUESTIONS ANSWERED.
WOODALL, BOLIN, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.
COBB, C.J., concurs in part and dissents in part.

. In Holcim (US), Inc. v. Ohio Casualty Insurance Co., 38 So.3d 722, 726-27 (Ala.2009), we noted that “this Court will rephrase a question certified to it in order to address the 'basic issue implicated by th[e] question’ and ‘contemplated by the Court of Appeals in its certification.' ” (Quoting John Deere Co. v. Gamble, 523 So.2d 95, 99 (Ala.1988).)

. At least one federal court applying Alabama law has recognized this principle as well. See Cloud v. Olin Corp., 552 F.Supp. 528, 534 (N.D.Ala.1982), (reviewing Garrett, Garren, and other decisions of this Court involving exposure to toxic substances and concluding that “any damages which ‘accrued' prior to the beginning date of the applicable statute of limitations are barred”).

. In the quoted excerpts from both Garrett and Phillips, this Court used the term "damages”; however, it appears from the context that the term "damage” should have been used. See American Stevedores, Inc. v. Porello, 330 U.S. 446, 450 n. 6, 67 S.Ct. 847, 91 L.Ed. 1011 (1947) ("It might be noted here that there is a distinction between damage and damages. Black's Law Dictionary cautions that the word ‘damage,’ meaning loss, injury, or deterioration,’ is 'to be distinguished from its plural, — ' damages, ' — which means a compensation in money for a loss or damage.' ”). For purposes of clarity we refer in this opinion to injuries occurring within the limitations period and to damages attributable to such injuries. Further, the term "exposure” is not the equivalent of injury. There may be exposure to a substance that does not cause an injury.

. Although Cline was a no-opinion affir-mance, Justice See wrote, concurring specially, joined by Chief Justice Nabers and Justice Stuart; Justice Smith wrote, concurring specially, joined by Justice Bolin; and Justice Harwood dissented, joined by Justices Lyons, Woodall, and Parker.