13 So.3d 947 (2009)
Bell CARR, Jr., et al.
v.
INTERNATIONAL REFINING & MANUFACTURING COMPANY d/b/a IRMCO, et al.
1070770.
Supreme Court of Alabama.
January 16, 2009.
Clatus Junkin, H. Gregory Pearson, Charles E. Harrison, and Samuel W. Junkin of Junkin, Pearson, Harrison & Junkin, LLC, Tuscaloosa, for appellants.
Richard Eldon Davis of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for appellant Castrol Industrial North America, Inc.
H.C. Ireland III of Porterfield, Harper, Mills & Motlow, P.A., Birmingham, for appellee Spartan Chemical.
Harlan I. Prater IV, William H. Morrow, and Craig N. Rosier of Lightfoot, Franklin & White, LLC, Birmingham, for appellees Certified Labs (a division of NCH Corporation), Chemsearch (a division of NCH Corporation), GE Betz, Inc., Henkel Corporation, Locite Corporation (now known as Henkel Corporation), Parker Amchem (a former operating group of Henkel Corporation), and Tremco, Inc.
*948 C. Paul Cavender of Burr & Forman, LLP, Birmingham, for appellee Precision Industrial Automation, Inc.
John W. Clark, Jr., and Cynthia N. Williams of Clark, Hair & Smith, P.C., Birmingham, for appellee A.M. Castle & Company, Inc.
John C.S. Pierce of Butler Pappas Weihmuller Katz Craig, LLP, Mobile, for appellee JohnsonDiversy, Inc., being sued as S.C. Johnson & Son, Inc.
Douglas L. McCoy and Lisa Darnley Cooper of Hand Arendall, L.L.C., Mobile, for appellee Bliss Clearing Niagra, Inc.
Joe E. Basenberg and James S. Witcher III of Hand Arendall, L.L.C., Mobile for appellees Tennant Company, Reiff & Nestor Company, and Premier Cutting Tools f/k/a Pine Bluff Cutting Tools.
Connie Ray Stockham and James M. Smith of Stockham, Carroll & Smith, P.C., Birmingham, for appellee IRMCO.
James E. Fleenor, Jr., of Battle Fleenor Green Winn & Clemmer, LLP, Birmingham, for appellee Buckman Laboratories, Inc.
John F. Whitaker of Whitaker, Mudd, Simms, Luke & Wells, LLC, Birmingham, for appellee Joamco Chemical Products, Inc.
James H. McLemore and Robert F. Northcutt of Capell & Howard, P.C., Montgomery, for appellee Contacts Metals & Welding, Inc.
Sidney J. Hardy of McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Covington, Louisiana, for appellee NSU Corp.
David B. Hall, Lawrence B. Clark, and Sara M. Turner of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Birmingham, for appellees The Minster Machine Company and AK Steel Corporation.
Leslie A. Caldwell of Lusk, Caldwell & Dean, P.C., Birmingham, for appellee Amcol Corp.
G. Thomas Yearout of Yearout, Spina & Lavelle, P.C., Birmingham, for appellee Research Solvents and Chemicals, Inc.
Richard E. Smith and Deborah Alley Smith of Christian & Small, LLP, Birmingham, for appellee Invitrogen Corporation.
H. Thomas Wells, Jr., Katie E. Loggins, and E. Bryan Nichols of Maynard, Cooper & Gale, P.C., Birmingham, for appellee Allegheny Ludlum Corporation.
Sydney F. Frazier, Jr., and Michael E. Turner of Cabaniss, Johnston Gardner, Dumas & O'Neal, LLP, Birmingham, for appellee Nalco Company.
Grey Redditt, Jr., and Timothy A. Clark of Vickers, Riis, Murray & Curran, Mobile, for appellee Delta Foremost Chemicals, Inc.
William T. Mills II of Porterfield, Harper, Mills & Motlow, P.A., Birmingham, for appellee Regal-Beloit Corporation.
Apsilah Owens Millsaps of Owens & Millsaps, LLP, Tuscaloosa, for appellees Barksdale Warrior Paper Co., Inc., and Nonferrous Products, Inc.
Lewis W. Page, Jr., of Page Law Firm, LLC, Birmingham, for appellee National Standard Company.
J. Alex Wyatt and David A. Lee of Parsons, Lee & Juliano, P.C., Birmingham, for appellee Sunnen Products, Inc.
Matthew W. Robinett of Norman, Wood, Kendrick & Turner, Birmingham, for appellee Inco Alloys International, Inc.
Clifotn Wayne Jefferis of Forman, Perry, Watkins, Krutz & Tardy, LLP, Jackson, Mississippi, for appellee Chemco Manufacturing Company, Inc.
*949 Timothy W. Knight of Kee & Selby, L.L.P., for appellees Lincoln Electric Company and L-Tec.
Charles Fleming, Jr., of Huie, Fernambucq & Stewart, LLP, Birmingham, for appellee D.A. Stuart Company.
Stanley A. Cash of Huie, Fernambucq & Stewart, LLP, Birmingham, for appellee Rochester-Midland.
Frank E. Lankford of Huie, Fernambucq & Stewart, LLP, Birmingham for appellees Hollingsworth & Vose Company and Houghton International, Inc.
Michael C. Quillen of Walston, Wells & Birchall, LLP, Birmingham, for appellees American Metal Fibers, Inc., Lancaster Fibers, Inc., and Alro Steel Corporation.
Chilton Davis Varner, Stephen B. Devereaux, and Bradley W. Pratt of King & Spalding, LLP, Atlanta, Georgia, for amicus curiae Product Liability Advisory Council, Inc., in support of the appellees.

On Application for Rehearing
LYONS, Justice.
This Court's opinion of November 14, 2008, is withdrawn, and the following is substituted therefor.
The appellants in this action ("the former employees") are several hundred former employees of Arvin Industries d/b/a Arvin-Meritor, Inc. ("Arvin"). The former employees sued Arvin and several of their co-employees, alleging that they had suffered injuries as a result of exposure to toxic chemicals while employed by Arvin. Through an amended complaint, the former employees added 64 other named defendants ("the new defendants"), who they alleged manufactured or sold Arvin the chemicals and equipment that injured the former employees. The former employees appeal from the Fayette Circuit Court's dismissal of their claims against the new defendants. We reverse and remand.
This is the second time this case has come before this Court. See Ex parte International Refining & Mfg. Co., 972 So.2d 784 (Ala.2007) ("International Refining"). In International Refining, we described the facts and procedural background as follows:
"On November 13, 2003, Bell Carr, Jr., and approximately 320 other former employees at a manufacturing plant operated by Arvin Industries d/b/a Arvin-Meritor, Inc. (hereinafter `the [former employees]'), sued Arvin-Meritor and six individual defendants, also former employees at the plant, where automotive mufflers were manufactured. The complaint alleged that up until the closing of the plant in May 2002, the [former employees] suffered harm from `exposure to toxic and dangerous chemicals' that were flushed from the manufacturing machines and eventually circulated into a large pit, which the [former employees] were responsible for draining and cleaning. In addition to these seven defendants, the original complaint fictitiously named 40 other defendants in the caption and in the body of the complaint.
"On May 6, 2005, approximately three years after their last exposure to the chemicals, the [former employees] filed their first amended complaint, seeking to add 64 new named defendants, including the petitioners, in place of the fictitiously named defendants (hereinafter `the new defendants'), 113 new plaintiffs, as well as additional fictitiously named defendants. The [first] amended complaint reasserted the five claims asserted in the original complaint, but only against the seven original defendants. The first amended complaint also alleged claims of negligence, wantonness, liability under the Alabama Extended Manufacturer's Liability Doctrine, civil *950 conspiracy, and the tort of outrage, but only against the new defendants."
972 So.2d at 787.
Regarding wantonness, the former employees alleged in count 6 of the first amended complaint that the new defendants had "wantonly engineered, designed, developed, configured, manufactured, assembled, distributed, and/or sold the chemicals" and other products that the former employees were exposed to through their work at Arvin. The former employees also alleged in count 13 that 5 of the new defendants had "wantonly engineered, designed,... manufactured, ... sold, inspected or consulted regarding the design, engineering, manufacturing, production, distribution and/or warnings associated with" the equipment used in Arvin's manufacturing process.
"On June 14, 2005, the new defendants removed the case to the United States District Court for the Northern District of Alabama pursuant to the Class Action Fairness Act (`CAFA'), 28 U.S.C. § 1453. The district court remanded the five original claims against the seven original defendants to the Fayette Circuit Court because they did not fall within the CAFA. The district court also determined that the claims in the amended complaint against the new defendants did not relate back under Alabama law and did not constitute what it referred to as an `interstate case of national importance.' Accordingly, the new claims asserted and the parties added in the amended complaint fell within the exception to federal jurisdiction under CAFA in 28 U.S.C. § 1332(d)(11)(B)(ii)(I), and the district court also remanded the remaining claims to the Fayette Circuit Court.
"Upon remand, the new defendants filed motions to dismiss, or, in the alternative, for a summary judgment, on the ground that the claims asserted against them in the amended complaint did not relate back to the date of the filing of the original complaint and are thus barred by the two-year statute of limitations. See § 6-2-38(l), Ala.Code 1975. The trial court conducted a hearing and denied the motions. The new defendants sought a certification to file a permissive appeal under Rule 5, Ala. R.App. P., but the trial court denied the request for the certification. The [new defendants] then filed [a] petition for a writ of mandamus."
International Refining, 972 So.2d at 787-88 (footnote omitted).
This Court granted the new defendants' petition and issued the writ of mandamus. We concluded in International Refining that the claims the former employees stated against the new defendants in the first amended complaint did not relate back to the claims they stated against the fictitiously named defendants identified in their original complaint. 972 So.2d at 791. Because the first amended complaint was filed in May 2005, three years after the former employees' last possible exposure to the allegedly toxic chemicals, any new claims stated in that complaint, which were subject to a two-year statutory limitations period, see § 6-2-38(l), Ala.Code 1975, were time-barred and due to be dismissed. 972 So.2d at 791.
We noted in International Refining that the former employees argued "that some of their claims nonetheless survive, because, they say, those claims fall within a six-year statute of limitations." 972 So.2d at 791. See § 6-2-34, Ala.Code 1975. However, we declined to reach the question whether a six-year statute of limitations applied to any of the former employees' claims against the new defendants, stating:

*951 "That issue ... is not before us; our mandamus review extends to reviewing the denial of motions for a dismissal or for a summary judgment that asserted a statute-of-limitations defense only as to fictitious-party practice. See [Ex parte] Stover, 663 So.2d [948,] 951-52 [(Ala. 1995) ]. The extent to which the amended complaint, filed within six years of the events made the basis of the action but not within two years thereof, states claims not barred by the two-year statute of limitations is a question not before us."
972 So.2d at 791. Therefore, we "reverse[d] the trial court's order denying the motions to dismiss, or for a summary judgment, and we remand[ed] the case for further proceedings, including a determination of the extent to which any claims are timely, without the availability of the relation-back doctrine." 972 So.2d at 791.
On remand, the new defendants filed motions to dismiss or, in the alternative, for a summary judgment, on the ground that all the claims asserted against them were subject to the two-year limitations period stated in § 6-2-38(l), Ala.Code 1975, and were due to be dismissed pursuant to this court's decision in International Refining. The former employees responded, arguing that their wantonness claims involved trespass to the person and, under McKenzie v. Killian, 887 So.2d 861 (Ala. 2004), were subject to the six-year limitations period stated in § 6-2-34(1), Ala. Code 1975. The former employees conceded that their other claims against the new defendants were subject to the two-year limitations period and, without the availability of the relation-back doctrine, were due to be dismissed.
On August 16, 2007, the former employees amended their complaint a second time. The second amended complaint stated that it was "intended to clarify the allegations contained in the Complaint and the First Amended Complaint in the wake of [International Refining ]." It also stated that "no new plaintiffs or defendants [were] added by way of [the] amendment" and that "all claims stated [therein arose] out of the conduct, transaction, or occurrences set forth in the First Amended Complaint [and] no new causes of action [were] stated by way of [the] amendment." The second amended complaint asserted only a workers' compensation claim against Arvin, a wantonness claim against the new defendants, and a separate wantonness claim against five of the new defendants who the former employees alleged had provided the equipment Arvin used in its manufacturing process.[1]
The wantonness claim asserted against the new defendants in the second amended complaint stated, in relevant part:
"[The new defendants] acted willfully and/or wantonly, and committed trespass to the persons of the former employees, in that the said defendants consciously acted or omitted to act, and in that they willfully and wantonly engineered, designed, developed, configured, manufactured, assembled, distributed and/or sold [the chemicals and other products] that resulted in physical impact to the persons of the former employees and injured the former employees, and in that the defendants acted or omitted a duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury would likely or probably result to the former employees, in reckless *952 or conscious disregard of the rights or safety of the former employees."
The wantonness claim asserted against the five new defendants who the former employees alleged had provided equipment to Arvin stated similar allegations.
The new defendants moved to strike the second amended complaint. However, the trial court did not rule on the motion to strike. Instead, the trial court concluded in its eventual ruling on the new defendants' motions to dismiss that, because the second amended complaint purported to state no new cause of action and to arise out of the same conduct and occurrences stated in the first amended complaint, the claims stated in the second amended complaint were subject to the same analysis as those in the first amended complaint. The new defendants argued that the wantonness claims in the first and second amended complaints were subject to a two-year limitations period because, they said, the claims were based on a products-liability theory. The new defendants relied on Malsch v. Bell Helicopter Textron, Inc., 916 So.2d 600, 601 (Ala.2005); Boyce v. Cassese, 941 So.2d 932, 945-46 (Ala.2006); Gilmore v. M & B Realty Co., 895 So.2d 200, 207-09 (Ala.2004); and Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala.1992). Based on this authority, on February 4, 2008, the trial court entered an order dismissing all the former employees' claims against the new defendants. The former employees' claims against Arvin remained pending; however, the trial court certified its February 4, 2008, order as final pursuant to Rule 54(b), Ala. R. Civ. P. The former employees filed a timely notice of appeal to this Court.
The standard of review of an order granting a motion to dismiss was set out in Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993):
"On appeal, a dismissal is not entitled to a presumption of correctness. ... The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief.... In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [the plaintiff] may possibly prevail.... We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."
The former employees argue on appeal that their wantonness claims against the new defendants are based in trespass to the person and are subject to the six-year limitations period stated in § 6-2-34(1), Ala.Code 1975. Section 6-2-34(1) provides, in relevant part, that actions "for any trespass to person or liberty, such as false imprisonment or assault and battery" must be commenced within six years. The former employees argue, therefore, that the trial court erred in dismissing their wantonness claims. The former employees rely, as they did before the trial court, on McKenzie v. Killian, 887 So.2d 861 (Ala.2004).
The new defendants argue in response that the former employees' wantonness claims are based on a products-liability theory and are therefore subject to the two-year limitations period found in § 6-2-38(l), Ala.Code 1975. That section provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." The new defendants base their argument on Malsch v. Bell Helicopter *953 Textron, Inc., 916 So.2d 600 (Ala.2005); Boyce v. Cassese, 941 So.2d 932 (Ala.2006); Gilmore v. M & B Realty Co., 895 So.2d 200 (Ala.2004); and Smith v. Medtronic, Inc., 607 So.2d 156 (Ala.1992).
In McKenzie v. Killian, the plaintiff asserted a wantonness claim against a motorist whose vehicle collided with hers. In response to the defendant's summary-judgment motion on statute-of-limitations grounds, the plaintiff argued that her wantonness claim was grounded in trespass and was thus subject to the six-year limitations period of § 6-2-34(1). The trial court entered a summary judgment for the defendant. Relying on Lowery v. Densmore, 739 So.2d 1115, 1116 (Ala.Civ.App. 1998), for the proposition that "trespass is an intentional or wanton direct application of force by a defendant," the trial court concluded that the plaintiff had not presented substantial evidence to support a finding of willful or wanton application of force by the defendant.
On appeal, the plaintiff argued that her wantonness claim was an action in trespass, not trespass on the case; that intent should be irrelevant to determining whether the action was subject to the six-year statute of limitations; and that she had presented substantial evidence showing "direct force." To determine whether the wantonness claim was subject to the six-year limitations period of § 6-2-34(1), this Court stated: "[I]t is not possible to explain our rejection of Lowery v. Densmore, [739 So.2d 1115 (Ala.Civ.App.1998),] stated as controlling by the trial court in its order finding the evidence insufficient, without first addressing the standard by which the statute of limitations is applied to allegations of negligence and wantonness." 887 So.2d at 866. We then analyzed Alabama caselaw regarding the distinction between trespass and trespass on the case and adopted the reasoning of Justice Jones's dissenting opinion in Strozier v. Marchich, 380 So.2d 804, 806 (Ala.1980):
"`Whatever vestige of the outmoded direct/indirect distinction between trespass and trespass on the case still exists in Alabama, I would now abandon and adopt instead the more modern tort concept of measuring the cause of action in terms of the degree of culpability of the alleged wrongful conduct. Wanton conduct, as that term is traditionally used and understood in the jurisprudence of our State, signifies the intentional doing of, or failing to do, an act, or discharge a duty, with the likelihood of injury to the person or property of another as a reasonably foreseeable consequence. Such conduct, resulting in injury, is actionable in trespass and governed by the six-year statute of limitations, in my opinion.'"
McKenzie, 887 So.2d at 870 (quoting Strozier, 380 So.2d at 806 (Jones, J., dissenting)(emphasis added)). We then stated: "We embrace this reasoning today. ... [W]anton conduct is the equivalent in law to intentional conduct. Such an allegation of intent renders the six-year statutory period of limitations applicable." Id.
This Court thus abandoned any determination of whether the six-year statute of limitations applies based on the presence of direct force to cause the injury in a claim alleging wantonness. In so holding, "[w]e overrule[d] Sasser [v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973),] and its progeny to the extent that those cases prefer the theory of causality over intent as the mechanism for distinguishing between actions for trespass and trespass on the case." McKenzie, 887 So.2d at 870. Based on our adoption of an intent-based analysis to determine whether the six-year statute of limitations applies to a wantonness claim, this Court affirmed the trial court's summary judgment because the *954 plaintiff in McKenzie had not presented substantial evidence of the defendant's intent necessary to support a claim of wantonness.
In this case, the former employees alleged that the new defendants engaged in wanton conduct in manufacturing and selling toxic chemical products and the equipment Arvin used in its manufacturing process. That wanton conduct, the former employees alleged, proximately resulted in their physical injuries. We stated in McKenzie: "[W]anton conduct is the equivalent in law to intentional conduct. Such an allegation of intent renders the six-year statutory period of limitations applicable." 887 So.2d at 870. We also adopted Justice Jones's conclusion that wanton conduct, "`resulting in injury, is actionable in trespass and governed by the six-year statute of limitations.'" Id. (quoting Strozier, 380 So.2d at 806 (Jones, J., dissenting)(emphasis added)). Based on the analysis adopted in McKenzie, because the former employees have alleged wanton conduct by the new defendants, which resulted in injury to them, their wantonness claims are subject to the six-year limitations period of § 6-2-34(1).
The new defendants argue that our decision in McKenzie to adopt an intent-based analysis is dicta. However, our opinion necessarily addressed the arguments the plaintiff in McKenzie raised on appeal. Furthermore, we expressly stated that the determination regarding an intent-based analysis was necessary because of the trial court's reliance upon Lowery v. Densmore, supra, which had used a direct-force analysis. Accordingly, our discussion of the caselaw regarding intent versus direct force and our ultimate adoption of an intent-based analysis was necessary to our opinion in McKenzie. Furthermore, we cannot reasonably characterize our decision to overrule Sasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973), and the line of cases following it as dicta.
The new defendants next argue that, even if the McKenzie analysis is not dicta, the analysis should not apply in products-liability cases. First, they argue that Smith v. Medtronic, Inc., supra, established a rule that all wantonness claims in products-liability cases are subject to the two-year limitations period of § 6-2-38(l). This Court's opinion in Medtronic stated: "An action alleging negligence, wantonness, or liability under the [Alabama Extended Manufacturer's Liability Doctrine] must be brought within two years after the cause of action accrued. See Ala.Code 1975, § 6-2-38(l)." 607 So.2d at 159. However, the determinative question in Medtronic involved when the claims of the former employees in Medtronic accrued. Nothing in our opinion suggests that the former employees in Medtronic ever argued that a longer statute of limitations applied. Therefore, we cannot say that this Court's statement in Medtronic, without argument or analysis regarding the application of a longer limitations period, established a separate rule for products-liability cases independent of the rule subsequently announced in McKenzie. In any event, to the extent Medtronic can be read as announcing a rule of law as to the statute of limitations in products-liability cases, for all that appears that holding was based on the now discredited preference for causality over intent.
The new defendants also rely on gratis dictum[2] in Malsch v. Bell Helicopter Textron, *955 Inc., 916 So.2d 600 (Ala.2005); Boyce v. Cassese, 941 So.2d 932 (Ala.2006); and Gilmore v. M & B Realty Co., 895 So.2d 200 (Ala.2004), to support their argument that, even after McKenzie, a separate rule for products-liability actions exists. In Malsch, an action arising out of a helicopter crash, this Court stated, without analysis, that both Mississippi and Alabama had "unambiguous two-year statutes of limitations for the action," which included a claim of wantonness. 916 So.2d at 601. However, Malsch involved a forum non conveniens determination, and this Court did not analyze the statutes of limitation applicable to the claims of the former employees in Malsch beyond the above-quoted statement. No party in Malsch argued that a longer statute of limitations should apply. Absent a more detailed analysis and a direct challenge to the rule announced in McKenzie, Malsch cannot reasonably be read as either deciding the issue of the application of McKenzie in a products-liability case or creating an exception to McKenzie.
In Boyce, an action arising from a dispute regarding the use of the plaintiffs' real property by a golf club, this Court stated: "Like fraud claims, negligence and wantonness claims are governed by a two-year statute of limitations. See § 6-2-38(l), Ala.Code 1975." 941 So.2d at 945. As in Malsch, it does not appear that the plaintiffs in Boyce ever argued that the analysis in McKenzie or a longer statute of limitations was applicable to their claims. Indeed, our opinion does not show that the plaintiffs in Boyce suffered any injury as would render their clams subject to the analysis announced in McKenzie. Furthermore, because Boyce did not involve products-liability claims, our opinion in that case does not support the argument that this Court has established a rule requiring a shorter limitations period in products-liability actions.
Finally, in Gilmore, a case in which the plaintiffs alleged that a realtor had sold them the wrong house, we noted that the plaintiffs "concede[d] that § 6-2-38(l), Ala.Code 1975, prescribes a two-year statute of limitations for their negligence and wantonness claims, measured upon the date of injury." 895 So.2d at 207. Our statement regarding the plaintiffs' concession in Gilmore does not indicate a decision by this Court to limit McKenzie. As in Boyce, there is no indication in Gilmore that the issue was ever raised, and we cannot say that this statement of the plaintiffs' concession regarding the statute of limitations in an action involving real property supports the argument by the new defendants that the application of McKenzie should be limited in products-liability actions.
Accordingly, the cases the new defendants cite do not show that this Court has created an exception to McKenzie for products-liability actions, and we have found no authority providing a basis for such an exception. The former employees in this case have alleged that the new defendants engaged in wanton conduct that resulted in injury to them. Accordingly, under the analysis announced in McKenzie, supra, the six-year limitations period of § 6-2-34(1) applies. We find no rational basis upon which to distinguish McKenzie so as to render its holding inapplicable. The former employees can prove a set of circumstances that would entitle them to relief, see Nance, 622 So.2d at 299; therefore, the trial court erred in dismissing the former employees' wantonness claims. We reverse its decision as to those claims and remand the case for further proceedings consistent with this opinion.
APPLICATION OVERRULED; OPINION OF NOVEMBER 14, 2008, *956 WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
COBB, C.J., and WOODALL and PARKER, JJ., concur.
SEE, STUART, SMITH, and BOLIN, JJ., concur in overruling the application for rehearing and concur in the result as to the opinion.
MURDOCK, J., dissents.
SEE, Justice (concurring in overruling the application for rehearing and concurring in the result as to the opinion).
I concur in overruling the application for a rehearing. I concur in the result reached by the main opinion for the following reasons.
I concurred in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), the controlling precedent in this case. Nonetheless, its application in this case is troubling. I concur in the result reached by the main opinion because (1) McKenzie is the current applicable law, (2) I do not believe that McKenzie can be distinguished from this case, and (3) this Court has not been asked to overrule McKenzie.
This Court concluded in McKenzie that "wanton conduct is the equivalent in law to intentional conduct" and that the "allegation of intent renders the six-year statutory period of limitations applicable." 887 So.2d at 870. In so doing, as the main opinion notes, the Court "abandoned any determination of whether the six-year statute of limitations applies based on the presence of direct force to cause the injury in a claim alleging wantonness." 13 So.3d at 953.
In the present case, the new defendants first argue that McKenzie is distinguishable because this case, unlike McKenzie, which involved a simple automobile accident, is a toxic-substance-exposure case. Castrol Industrial North America's brief at 35. If, however, this Court were to determine the applicable statute of limitations here on the basis of the alleged harm, namely, an injury arising out of a motor-vehicle wreck versus a toxic tort, we would be abandoning our conclusion in McKenzie that it is the "allegation of intent [that] renders the six-year statutory period of limitations applicable." See McKenzie, 887 So.2d at 870 ("We overrule Sasser [v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973),] and its progeny to the extent that those cases prefer the theory of causality over intent as the mechanism for distinguishing between actions for trespass and for trespass on the case."). Such a conclusion would, in effect, overrule McKenzie, a task that we have not been asked to undertake.
The new defendants also argue that "[t]he relevant discussion in McKenzie is dicta that does not control this case." Joint brief of appellees at 14. In support of this argument, the new defendants quote the following language from McKenzie:
"[T]he record supports the affirmance [of the summary judgment entered against McKenzie] on the ground that the evidence was insufficient to support McKenzie's wantonness claim, notwithstanding Killian's failure to assert that ground in his summary-judgment motion, because McKenzie failed to challenge below the trial court's reliance upon that ground."
887 So.2d at 866. The new defendants point to this language for the proposition that this Court decided McKenzie on the basis that McKenzie's wantonness claim was not supported by sufficient evidence; therefore, the new defendants conclude, our decision in McKenzie was not based on the statute-of-limitations discussion. Joint brief of appellees at 14. McKenzie, however, offers no support for such a reading.
*957 Rebecca McKenzie, the plaintiff in McKenzie, sued George Killian III, among others, alleging negligence and willful and/or wanton conduct. 887 So.2d at 863. Killian moved for a summary judgment, arguing that McKenzie's claims were barred by the two-year statute of limitations. McKenzie "responded by arguing that her wantonness claims were grounded in an action for trespass and were therefore governed by the six-year statute of limitations set forth in § 6-2-34(a), Ala. Code 1975." 887 So.2d at 863. After noting that "`trespass is an intentional or wanton direct application of force by defendant or under his or her authority,'" the trial court concluded that McKenzie's claim was time-barred because "`there [was] no evidence to establish a willful or wanton application of force.'" McKenzie, 887 So.2d at 863. Implicit in the trial court's ruling is the conclusion that McKenzie's claim was, in fact, an action for trespass on the case, and not one for trespass.
On appeal, this Court addressed as a threshold matter whether McKenzie's claim was time-barred and determined that the correct "mechanism for distinguishing between actions for trespass and for trespass on the case" is not the causalitythat is, whether there was a direct or an indirect application of forcebut the intent giving rise to the act or harm. The Court then concluded that "wanton conduct is the equivalent in law to intentional conduct. Such an allegation of intent renders the six-year statutory period of limitations applicable." 887 So.2d at 870. From this conclusion, the Court held that McKenzie's wantonness claim was not time-barred. Having addressed the threshold question of which limitations period was applicable to McKenzie's wantonness claim, this Court then addressed whether McKenzie had met her burden of establishing that claim. This Court held that although the trial court had applied the wrong statute-of-limitations provision, the summary judgment nevertheless was appropriate because McKenzie's wantonness claim was not supported by substantial evidence. 887 So.2d at 871. As the main opinion notes, our discussion whether McKenzie's wantonness claim was time-barred was necessary to properly address the trial court's judgment and thus is not dicta, as the new defendants assert. See Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002) ("[O]biter dictum is, by definition, not essential to the judgment of the court which states the dictum ....").[3]
Were we asked to review our decision in McKenzie to address whether all wantonness claims are subject to a six-year statute of limitations, I would expect a developed analysis that addresses the applicable statute of limitations in light of our statutory *958 scheme. Section 6-2-34, Ala.Code 1975, provides that "[a]ctions for any trespass to person or liberty, such as false imprisonment or assault and battery" must be commenced within six years. I question whether all wanton conduct is, by definition, an action for trespass analogous to false imprisonment or assault and battery, both of which require intent to commit the wrongful act.[4] If § 6-2-34, Ala. Code 1975, does not encompass all wanton conduct, and if, as it appears, a statute-of-limitations provision for wanton conduct is not addressed elsewhere in the statutory scheme, then by default a wantonness claim would be subject to the two-year statute-of-limitations provision.[5]See § 6-2-38(l), Ala.Code 1975 ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[6]
Although I am troubled by the application of McKenzie in this case, I do not *959 believe that McKenzie is distinguishable or that the statute-of-limitations analysis therein is dicta; therefore, because we have not been asked to overrule McKenzie, I concur in the result of the main opinion.
MURDOCK, Justice (dissenting).
I agree with the new defendants that the pronouncement in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), that the six-year limitations period of § 6-2-34(1) applies to wantonness claims, does not bind this Court in the present case. As Justice See notes in his special writing, 13 So.3d at 957, dictum is, by definition, "`not essential to the judgment of the court which states the dictum'" (quoting Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002)). McKenzie was a case that, as this Court decided, did not even involve wantonness on the part of the defendant. This Court held that, "[b]ased on the facts before us, we cannot conclude that Killian consciously did some act or omitted some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury would likely or probably result." 887 So.2d at 871. We therefore were able to, and did, "affirm the trial court's summary judgment in favor of Killian based on the facts before us on authority of [Alfa Mutual Insurance Co. v.] Roush[, 723 So.2d 1250, 1256 (Ala.1998) ]." 887 So.2d at 871 (defining "wantonness" as above quoted from McKenzie)(emphasis added). I therefore agree with the position of the new defendants that, because McKenzie was a case in which the evidence did not present a wantonness claim, it was not essential in that case to decide the correct limitations period for a wantonness claim. Although the legal conclusion announced in McKenzie as to the statute of limitations certainly may be taken as persuasive authority, I would not consider it to have the same authoritative weight, at least not on this Court, as it would if the result in McKenzie had actually depended on the outcome of that issue. See generally, e.g., Stark v. Watson, 359 P.2d 191, 196 (Okla.1961) ("`Obiter dictum is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while judicial dictum is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other, and should not be lightly disregarded.'" (quoting Crescent Ring Co. v. Travelers' Indem. Co., 102 N.J.L. 85, 132 A. 106, 107 (1926))).
Even aside from the foregoing, however, I have no qualm with this Court's taking up in the present case the issue of the proper understanding of §§ 6-2-34(1) and 6-2-38(l). I agree with the main opinion that the new defendants argue in their briefs to this Court that any application of a six-year statute of limitations to wantonness claims should not be extended to toxic-substance or other products-liability cases. I can agree with the main opinion, at least for purposes of this case, that any difference between wantonness claims generally and products-liability cases does not provide a sufficiently principled basis for not applying the six-year limitations period to this case, if it is to be applied to claims of wantonness generally. I do not agree, however, that the arguments of the new defendants and the cases they cite are not sufficient to raise the issue whether the six-year statute of limitations applies to wantonness claims generally.
The brief filed by new defendant Castrol Industrial North America, Inc. ("Castrol"), begins with extensive statutory-construction arguments, including an argument that § 6-2-34(1) should be limited to injuries *960 of the nature of assault and battery and false imprisonment specifically enumerated therein. Castrol brief at 22. In addition, before moving to a more specific discussion of toxic-tort cases, the Castrol brief contains the following general observation and citations to cases that are not toxic-tort cases:
"The Court's own recent decisions demonstrate that claims of wantonness are subject to § 6-2-38(l). `[I]n at least two cases postdating McKenzie v. Killian, the Alabama Supreme Court has applied a two-year statute of limitations to wantonness claims.' Ratcliff v. Heavy Machines, Inc., [No. 06-0861-WS-M] (S.D.Ala. July 17, 2007) [not reported in F.Supp.2d] (citing Boyce v. Cassese, 941 So.2d 932, 946 (Ala.2006); Gilmore v. M & B Realty Co., L.L.C., 895 So.2d 200, 207-08 (Ala.2004)); see also Malsch v. Bell Helicopter Textron, Inc., 916 So.2d 600, 601 (Ala.2005) (wantonness claim subject to `unambiguous statute of limitations')."
Castrol brief at 35.
Similarly, before moving to a more specific argument that this Court should not apply the six-year limitations period to "products-liability" cases, the "Joint Brief of the Appellees" refers to, and cites some of, "decades" of Alabama cases, most not involving toxic-tort or other products-liability issues, which have consistently "placed wantonness claims under the two-year bar of Ala.Code § 6-2-38(l)":
"This Court has confirmed the application of the two-year bar to claims of wantonness in three cases post-dating McKenzie: Boyce v. Cassese, 941 So.2d 932, 945-46 (Ala.2006); Malsch v. Bell Helicopter Textron Inc., 916 So.2d 600, 601 (Ala.2005); and Gilmore v. M & B Realty Co., 895 So.2d 200, 207-09 (Ala. 2004). The Southern Federal District of Alabama rejected an argument similar to the Plaintiffs' in Ratcliff v. Heavy Machines Inc., [No. 06-0861-WS-M, July 17, 2007] (S.D.Ala.) [not reported in F.Supp.2d]. This was in accord with decades of Alabama law that placed wantonness claims under the two-year bar of Ala.Code § 6-2-38(l).3
"3 Some such cases from the 16 years preceding McKenzie include: Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 125 (Ala.2003) (`An action alleging ... wantonness ... must be brought within two years after the cause of action accrued.'); Jim Walter Homes, Inc. v. Nicholas, 843 So.2d 133, 135-36 (Ala.2002) (holding that wantonness claim was barred under § 6-2-38(l)); R.R. Sanders v. Peoples Bank and Trust Co., 817 So.2d 683, 686 (Ala.2001) (wantonness governed by two-year statute); Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800, 805 (Ala.1999) (`[A]n action alleging ... wantonness must be brought within two years of [its] accrual ....'); Life Ins. Co. of Georgia v. Smith, 719 So.2d 797, 802-03 (Ala.1998) (wantonness governed by two-year statute); Booker v. United Amer. Ins. Co., 700 So.2d 1333, [1340] (Ala.1997) (`Because the [plaintiffs] filed their complaint [in August 1993] over two years after their claims accrued their negligence and wantonness claims are time-barred.'); Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 627 (Ala.1993) (wantonness claim `governed by the two-year statute' at § 6-2-38(l)); Henson v. Celtic Life Ins. Co., 621 So.2d 1268, 1274 (Ala.1993) (`The statutory period of limitations for ... wantonness actions, found at ... § 6-2-38, is two years ....'); Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala.1992) (`An action alleging ... wantonness ... must be *961 brought within two years after the cause of action accrued.')."
Joint brief of appellees at 15-16. Later in their joint brief, the new defendants discuss these post-McKenzie cases in more detail and provide a substantial argument, not limited to toxic-tort or other products-liability cases, that "these cases still reflect this Court's continued understanding that wantonness claims attract the two-year time bar of § 6-2-38(l)." Joint brief of appellees at 33.
Similarly, before turning to the narrower question of whether products-liability cases in particular should be governed by a two-year statute of limitations, Spartan Chemical Company, Inc., argues more generally as follows:
"First and foremost, the plain language of Ala.Code §§ 6-2-34(1) and 6-2-38(l) (1975) warrants dismissal of the Bell Carr Plaintiffs' allegations of `wanton' conduct. Section 6-2-38(l) clearly requires that `[a]ll actions for any injury to the person or rights of another, not arising from contract and not specifically enumerated in this section must be brought within two years.' The Plaintiffs allegations do not arise out of contract and do not implicate another enumerated action within that statutory section. Thus, a plain reading of that statute requires application of the two-year limitation period to the Plaintiffs' claims. This conclusion is supported by years of settled Alabama law."
Spartan Chemical brief at 13. The brief then continues with discussions of IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992), to urge "a plain language" interpretation of §§ 6-2-34(1) and 6-2-38(l), Ala.Code 1975, and of Winner v. Marion County Commission, 415 So.2d 1061 (Ala.1982), to argue that the examples of "assault and battery" and "false imprisonment" in § 6-2-34(1) provide meaning to the more general term, "trespass," in the statute. Spartan Chemical brief at 13-16.
In short, the new defendants briefs (1) argue the application of principles of statutory construction to the relevant statutes and (2) cite this Court to numerous cases decided both before and after McKenzie that are not limited to toxic-tort or other products-liability claims and argue that these cases stand for the proposition that a two-year limitations period now prescribed by § 6-2-38(l) should apply to wantonness claims. Implicitly, and of necessity, they argue that McKenzie was incorrectly decided in this regard. Moreover, in "response," both the initial brief and the reply brief of the plaintiffs fully argue the merits of the very issues joined by the new defendants. Indeed, if anything, the plaintiffs' briefs on appeal parse the reasoning and analytically discuss the relative merits of the McKenzie decision and the conflicting pre- and post-McKenzie decisions issued by this Court more thoroughly than do the new defendants.
In the context of these arguments, it clearly is within the authority, indeed it is the responsibility, of this Court to decide this issue and to properly declare the state of the law in Alabama on this issue. If, in the course of doing so, we determine that the two-year statute of limitations is applicable, and that McKenzie was incorrectly decided on this issue, then it falls to us to so hold. Our doing so would not require us to overrule a long line of well-established precedents; to the contrary, it would require us to overrule only a single case that stands as an exception to a long line of cases that were decided both before and after McKenzie, and upon which the new defendants expressly rely. See, e.g., Ex parte Howell Eng'g & Surveying, Inc., 981 So.2d 413, 423 (Ala.2006) ("Because we hold that the line of cases culminating in *962 Southeast Cancer[ Network, P.C. v. DCH Healthcare Authority, Inc., 869 So.2d 452 (Ala.2003),] is the better reasoned, to the extent that Dyson[ Conveyor Maintenance, Inc. v. Young & Vann Supply Co., 529 So.2d 212 (Ala.1988)], Defco[, Inc. v. Decatur Cylinder, Inc., 595 So.2d 1329 (Ala.1992)], and Sevier[ Insurance Agency, Inc. v. Willis Corroon Corp. of Birmingham, 711 So.2d 995 (Ala.1998),] conflict with this opinion, they are hereby overruled. We acknowledge that HES did not ground its petition for a writ of certiorari on Rule 39(a)(1)(E), Ala. R.App. P., by seeking to have overruled the controlling precedent relied upon by the Court of Civil Appeals.").[7]
I turn then to a consideration of the substantive issue presented. I begin by noting that I have no quarrel with the conclusion reached in McKenzie that the issue presented turns on "the degree of culpability of the alleged wrongful conduct." McKenzie, 887 So.2d at 870 (quoting Justice Jones's dissenting opinion in Strozier v. Marchich, 380 So.2d 804, 809 (1980)). As Strozier documents, courts as a general rule have moved from a causality-based distinction between actions labeled as trespass and trespass on the case to a culpability-based distinction, i.e., between intentional torts and those based in negligence.
In discussing the transition from a jurisprudence that categorized causes of action based on the causal sequence of events to one that categorizes based on the culpability of the tortfeasor, one well known authority makes no mention of recklessness or wantonness, instead dividing actions merely between those involving intentional conduct and those involving negligence. See W. Page Keeton, Prosser and Keeton on the Law of Torts at 29-31 (5th ed.1984). Further, the discussion in Prosser explains that causes of action for trespass, assault and battery, and false imprisonment  in other words, causes of action of the very type addressed in § 6-2-34(1)  involve intentional conduct by the tortfeasor: "Terms such as battery, assault and false imprisonment, which were varieties of trespass, came to be associated with intent, and negligence emerged as a separate tort. ... There is still some occasional confusion, and some talk of a negligent `assault and battery,' but in general these terms are restricted to cases of intent." Id. at 30 (footnote omitted). "`The intention to do harm, or an unlawful intent, is of the very essence of an assault, and without it there can be none.'" Id. at 30 n. 17 (quoting Raefeldt v. Koenig, 152 Wis. 459, 462, 140 N.W. 56, 57 (1912)). See also id. at 31 n. 18 (explaining that "assault and battery, false imprisonment, and trespass to land" were "derived from trespass").[8]
*963 Our own cases likewise hold that the types of claims described in § 6-2-34(1) involve intentional harm to the plaintiff. See, e.g., Harper v. Winston County, 892 So.2d 346, 353 (Ala.2004) (explaining that the unconsented touching in an assault and battery must have been done intentionally); Crown Cent. Petroleum Corp. v. Williams, 679 So.2d 651 (Ala.1996) (false-imprisonment case). In contrast, "`"[w]antoness" has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'" Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala.1991)). "To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998).[9]
*964 It is true that this Court has stated that "[w]antonness is not merely a higher degree of culpability than negligence" and that negligence and culpability "are qualitatively different tort concepts." Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala.1987). Accepting this proposition as true for present purposes, I would submit that if the difference between negligence and recklessness is a qualitative one rather than one of degree, then the difference between reckless conduct and intentional conduct is even more of a qualitative difference, and certainly one that is more definitive conceptually.[10]
But to show that claims alleging recklessness or wantonness are more akin in either quality or degree to claims alleging negligence than they are to claims based on a tortfeasor's actual, specific intent to harm would be to show more than is necessary. As Justice See notes in his special writing, questioning the conclusion reached in McKenzie that claims of reckless and wanton conduct ought to be treated the same as claims for intentional torts for purposes of the statute of limitations "does not require that wanton conduct be considered more closely akin to negligence than to an intentional tort; this Court has repeatedly held that wantonness is neither an intentional tort nor some form of `super-negligence.'" 13 So.3d at 958 n. 6 (See, J., concurring in the result) (emphasis added). All that is required is to be able to conclude that reckless or wanton conduct is not intentional conduct.
I am clear to the conclusion that recklessness and wantonness are fundamentally, and definitively, different concepts than intent and that claims alleging reckless or wanton conduct are fundamentally, and definitively, different types of claims from those alleging intentional harm to the plaintiff. I therefore cannot place claims for such conduct within the governance of § 6-2-34(1), which I interpret as imposing a six-year statute of limitations on the intentional torts described therein, i.e., "trespass to person or liberty, such as false imprisonment or assault and battery." Concomitantly, I must conclude that claims alleging reckless and wanton conduct, just like those alleging negligence and, for that matter, any number of nonintentional torts, fall within the governance of the general provision in § 6-2-38(l) for a two-year limitations period for "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section."
As previously noted, a long line of decisions reaching back many years, including some that postdate McKenzie, has consistently *965 affirmed the proposition that wantonness claims are governed by the relatively shorter statute of limitations now embodied in § 6-2-38(l). I believe this Court should once again affirm that proposition.
I therefore respectfully dissent.
NOTES
[1] It is unclear from the record on appeal whether the former employees' claims against their co-employees have been resolved.
[2] "`An opinion given in Court ..., if not necessary to the judgment given of record, but that it might have been as well given, if no such, or a contrary opinion had been broached, is no judicial opinion, no more than a gratis dictum.'" Planters' & Merchants' Bank v. Walker, 7 Ala. 926, 944 (1845).
[3] Black's Law Dictionary 409 (8th. ed.2004) defines obiter dictum as: "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case ...." It is true that in McKenzie, as in many other cases addressed by this and other appellate courts, it turned out that one of the two issues addressed by this Court could have been avoided by addressing the other issue first. In fact, in McKenzie, a priori, either of the two issuesthe statute-of-limitations issue or the sufficiency-of-the-evidence issuecould have been dispositive, depending on the outcome of the analysis of the respective issues. However, in light of the trial court's order in McKenzie, this Court chose to analyze first the statute-of-limitations issue and then, only after the analysis of that issue turned out not to be dispositive, to address the sufficiency of the evidence of wantonness. The issue with which this Court begins its analysis is a matter that lies within the discretion of this Court. The proper question is not whether with perfect hindsight this Court could have reached the same result by another route; rather, the proper question is whether, having chosen the route we chose, the analysis was reasonably related to arriving at the result.
[4] Compare Crown Cent. Petroleum Corp. v. Williams, 679 So.2d 651, 653 (Ala. 1996) ("False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." (citing § 6-5-170, Ala.Code 1975)), and Harper v. Winston County, 892 So.2d 346, 353 (Ala.2004) ("The plaintiff in an action alleging assault and battery must prove `(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.'" (quoting Ex parte Atmore Cmty. Hosp., 719 So.2d 1190, 1193 (Ala.1998))) with Jordan v. Calloway, 7 So.3d 310, 317 (Ala.2008) ("Wantonness is `"the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."'" (quoting Barker v. Towns, 747 So.2d 907, 907 (Ala.Civ.App.1999), quoting in turn Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998))). See also Berness v. Regency Square Assocs., Ltd., 514 So.2d 1346, 1349-50 (Ala. 1987) ("`"Wantonness has been defined as the conscious doing of some act or the omission of some duty [while] under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result, and before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result. Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505 [(1946)]; Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277 [(1960)]; Johnson v. Sexton, [277 Ala. 627, 173 So.2d 790] [(1965)]."'" (quoting Roberts v. Brown, 384 So.2d 1047, 1048 (Ala.1980), quoting in turn Lewis v. Zell, 279 Ala. 33, 36, 181 So.2d 101, 104 (1965))).
[5] Although it may be suggested that the new defendants engaged in the intentional act of engineering, designing, developing, configuring, manufacturing, assembling, distributing, and/or selling the chemicals or equipment used at the muffler-assembly plant, there does not appear to be any allegation of an intent to do harm. It is for this reason that I am concerned with a six-year statute of limitations in this case. However, I understand that under a wantonness standard, the former employees will have to prove not only that the new defendants intended to engineer, design, develop, configure, manufacture, assemble, distribute, and/or sell the chemicals or equipment used at the muffler-assembly plant, but also that the new defendants performed those tasks "with reckless indifference to the consequences" that proximately caused the former employees' injuries.
[6] This does not require that wanton conduct be considered more closely akin to negligence than to an intentional tort; this Court has repeatedly held that wantonness is neither an intentional tort nor some form of "super-negligence." See Phillips ex rel. Phillips v. United Services Auto. Ass'n, 988 So.2d 464, 467 (Ala.2008) ("`"Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability."'" (quoting Ex parte Anderson, 682 So.2d 467, 469 (Ala. 1996), quoting in turn Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala. 1987))).
[7] I would also note that my position does not require us to reach out to consider and overrule a case for purposes of reversing a lower court's decision and, in so doing, to undertake a task that an appellant has not asked us to undertake. Rather, we would be responding to the arguments made by the appellees regarding the proper interpretation of § 6-2-34(1) and § 6-2-38(l), and in the course of doing so we would affirm the judgment of the trial court. See generally General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala.2003) ("This Court may affirm a trial court's judgment on `any valid legal ground presented by the record ....'" (quoting Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala.2003))). See also, e.g., Ex parte Wiginton, 743 So.2d 1071, 1072-73 (Ala.1999) ("The appellate courts will sustain the decision of the trial court if it is right for any reason, even one not presented by a party or considered or cited by the trial judge, Morrison v. Franklin, 655 So.2d 964 (Ala.1995), even though the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling, Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988).").
[8] "At common law, trespass to the person was described as trespass vi et armis, `by force and arms.'" Lovell v. Acrea, 500 So.2d 1082, 1083 (Ala.1986). Such "trespass to the person" is exactly what is addressed in § 6-2-34(1) and in its precursors dating back to the enactment in 1852 of § 2477, Ala.Code. Although an earlier case, decided in 1827, stated trespass will lie when the injury is "direct and immediate, whether it proceed from design or negligence," Rhodes v. Roberts, 1 Stew. 145, 145 (Ala.1827), not long after (and according to Justice Jones in Strozier, "perhaps on account of") the legislature's 1852 enactment of a six-year statute of limitations for actions alleging "trespass," this Court held that it was the intentional procurement of a harm to the plaintiff that made for a "trespass," even if the harm does not result from the direct application of force by the defendant:

"[A] count which charges that Pleas [the defendant's slave] willfully burned the dwelling-house of plaintiff, and that said slave was instigated and persuaded thereto by the defendant, is, in form, a count in trespass, and charges the defendant with the commission of a felony.
"On the other hand, some of the counts, in both the original and amended complaints, charge on the defendant's intestate no actual or intentional procuration of the arson, but seek to base his liability on his negligently permitting Pleas, his slave, and of known bad character, to run at large, contrary to law. These counts, if they have any legal validity, are in case, and should not have been joined with a count in trespass."
Bell's Adm'r v. Troy, 35 Ala. 184, 202 (1859). Several years later, in Pruitt v. Ellington, 59 Ala. 454, 457 (1877), the Court cited Bell's Adm'r v. Troy and similarly held:
"The distinction between an action on the case, and an action of trespass, is in effect, though not in terms preserved by the Code. For a tort committed with force and intentionally, the immediate consequence of which is injury, trespass is the appropriate remedy. If the injury proceeds from mere negligence, or is not the immediate consequence of the tort, case is the appropriate remedy."
(Emphasis added.)
Despite the consistency of the Bell and Pruitt cases in focusing upon the intent of the actor, and thus making a good start at establishing not only internal consistency within Alabama cases, but also consistency with the transition then underway in English and American jurisprudence generally from a causality analysis to an intent-based analysis, see discussion supra of Prosser, cases decided in Alabama after Pruitt often resorted to an inconsistent and confusing mixture of references to both causality factors and intent. See discussion in McKenzie, 887 So.2d at 867-70.
[9] In reaching its conclusion that wantonness ought to be treated for statute-of-limitations purposes the same as intentional conduct, the McKenzie Court quoted Justice Jones's reasoning in Strozier v. Marchich that "`[o]ne who knowingly sets into motion, by intentionally doing (or failing to do) an act, a sequence of events resulting in reasonably foreseeable injury to another, whether the resulting injury is immediate or consequential, in my opinion, has committed a trespass within the contemplation of the six-year statute of limitations.'" McKenzie, 887 So.2d at 870 (quoting Strozier, 380 So.2d at 809 (Jones, J., dissenting)). The intent merely to act in a certain way, often referred to in the law as "willful" conduct, and the specific intent to harm are two different things, however, and that difference denotes the line between nonintentional torts and intentional torts. As worded, the quoted statement from Strozier is a reference to the former.
[10] Prosser states that the terms "willful," "wanton," and "reckless"

"have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care. ... They apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended. Thus it is held to justify an award of punitive damages, and may justify a broader duty, and more extended liability for consequences, and it will avoid the defense of ordinary contributory negligence on the part of the plaintiff."
Prosser at 212-14 (footnotes omitted)(emphasis added).